Cox v. Shropshire.

in the case quite as favorable to the appellants, to say the least, as the law would warrant; and, on the whole, we are of opinion that there is no error in the judgment. It is, therefore, affirmed.

Judgment affirmed.

Mr. Justice Bell, having presided as district judge on the trial of this case, did not sit.

## Isaac W. Cox v. B. Shropshire.

That one of the parties to an action of trespass to try title claims under a deed alleged to be void, has never been deemed to require that the vendor in the deed be made a party.

See this case for facts sufficient to show an abandonment of the homestead.

A conveyance of property which is exempt by law from execution or forced sale, (as of a homestead while it remained such,) cannot be a fraud upon creditors. Such a conveyance is not within the purview of the statute of frauds.

If the deed, however, was simulated and colorable merely, made upon a secret trust, that the vendee should hold the property for the vendor, after the latter had abandoned the use of it as a homestead; a mere pretence and contrivance to protect the property from the claims of the creditors of the vendor, after, by its abandonment as a homestead, it had become liable to be taken in execution; the property remains in the vendor, and is liable to be taken in execution for his debts.

The charge of the court in this case held not to be objectionable, as charging upon the weight of the evidence, or as calculated improperly to influence the minds of the jury. Under the pleadings and facts, and the charge so clearly presenting the true issue in the case, it was not error to remark in the charge, upon the inference which may be drawn from the failure of a party to introduce explanatory evidence concerning a transaction charged to be fraudulent, when it is in his power to explain.

Appeal from Fayette. Tried below before the Hon. James H. Bell.

This was a suit brought by Benjamin Shropshire against Isaac

8Y

W. Cox, of trespass to try title, on the 13th day of October, 1856, for the recovery of a tract of land containing sixty-nine acres. The petition of the plaintiff alleged that the defendant holds possession of the land by virtue of a deed which is fraudulent and void.

The defendant answered by a plea of the general issue, a special denial of the alleged fraud, and the further answer, that he purchased the said tract on the 1st day of September, 1854, at the price of $8 per acre from James M. Cox, and his wife E. H. Cox, and received from them a deed thereto; that at the time of the purchase it was and had been previously owned and occupied as their homestead, and that since the purchase, he has himself owned and occupied it as his homestead; and that the deed aforesaid was filed for record on the 29th day of September, 1856, and was duly recorded in the county clerk's office of Fayette county, on the 6th day of October, 1856. Defendant also alleged that the plaintiff, at the time of acquiring his pretended title, had full knowledge of the defendant's claim and title.

The plaintiff, by amendment to his petition, by way of replication, alleged that the pretended sale to the defendant from James M. Cox and his wife, was fraudulent and void; that the defendant collusively and fraudulently entered into said contract for the purpose of concealing the title of James M. Cox, and to hinder and delay the rights of all existing creditors against said James M. Cox, or all who might hereafter become such, and especially for the purpose of hindering and delaying one A. C. Hosmer, under whose execution sale he (the plaintiff) had purchased the said land. That by said pretended and fraudulent sale and transfer no title to said land ever really passed to the defendant, but remained in said James M., as before the making of the deed, and liable for his debts. That the deed was a sham and a fraud, that the consideration of $800 as set forth in the deed, was never paid by the defendant to James M. Cox and his wife, nor has any consideration for the pretended purchase been paid.

On the trial, it was agreed that the title from the government down to James M. Cox is regular. The plaintiff relied on a sheriff's deed to him for the land, dated the 7th day of October, 1856, made

by virtue of a sale under an execution which was issued on the 28th day of April, 1856, to satisfy a judgment in favor of A. C. Hosmer against said James M. Cox, rendered on the 25th day of March, 1856, for $1,500, the plaintiff being the purchaser at the sheriff's sale for the sum of $68 31.

The defendant read in evidence a deed to the land from James M. Cox and his wife, dated the 1st day of September, 1854, which deed recited the consideration of $800, the receipt whereof was therein acknowledged by the grantors. The deed was filed for record and recorded as stated in the defendant's answer.

It appeared from the testimony that in April, 1853, A. C. Hosmer instituted a suit in the District Court of Fayette county, against James M. Cox for five thousand dollars, as damages sustained by the mal-practice of the said James M. Cox as a physician, in which he recovered a judgment for fifteen hundred dollars, as aforesaid. That during the pendency of the suit the defendant thereto sold all his property, and in the fall of the year 1854 left the county and went to Hill county. He declared his intention to sell all his property except his homestead (which he said the law would protect,) to avoid the payment of the judgment which might be rendered in the case of Hosmer against him. He offered to sell to one of the witnesses a valuable negro boy, at a price so low as to cause him to be astonished, and on inquiring of him as to his reason for offering such a sale, he declared his object as stated above.

The defendant in this suit, Isaac W. Cox, stated either at the term at which the case of Hosmer v. James M. Cox was tried, or at the previous term, that his brother James M. would have no property that execution could reach by the time that suit was terminated, and that the land (now in controversy) on which he, (Isaac W.) was then living would be his when he paid for it. It was proved that Isaac W. had but little or no property; that James M. had lived on the land as their homestead about eighteen months before he sold to the defendant, and that the latter went into possession about eight days after the former left it, and has since continued to occupy it.

The defendant, at the sale by the sheriff, forbade the sale, and

stated that his deed was on record. It was further proved that the defendant had sold his land near Rutersville before he obtained the deed from James M.; that the land in controversy was then worth ten or twelve dollars per acre, and that the suit of Hosmer was of general notoriety in the neighborhood.

It was proved that James M. Cox, previous to the termination of the suit with Hosmer, was residing in Hill county, and one witness testified that he offered to buy land from him in that county. He returned on a visit in October, 1856, to Fayette county, and then stated that he was residing in Hill county, where he was engaged in speculating in reserve lands.

The court charged the jury as follows:

" The law exempts from execution or forced sale the homestead of every head of a family.

" 1st. If you believe from the evidence that the land in controversy was the homestead of James M. Cox, at the time of the date of the deed to Isaac W. Cox, in September, 1854, and if you believe further from the evidence, that Isaac W. Cox purchased the land in controversy from James M. Cox, and that the deed from James M. to Isaac W., was executed in September, 1854, as it purports to be, and that Isaac W. has lived on the land as his homestead since James M. left it, then the plaintiff can not recover in this suit, and you will find for the defendant, even though the deed was not filed for record until after the levy of execution upon the judgment, under which plaintiff in this suit claims.

" 2d. Whenever a man abandons his homestead, it becomes liable to execution for his debts; but is not deemed to have abandoned it because he leaves it temporarily without acquiring another. The jury must be satisfied by evidence that the party has left his homestead with the intention of abandoning it, before it can be subjected to the payment of his debts.

" 3d. If you believe from the evidence, that there was no sale of the land from James M. Cox to Isaac W. Cox, but that the pretended sale and subsequent possession by Isaac W. Cox was a mere fraudulent device or scheme to enable Isaac W. to hold the land for James M., and to protect it from his creditors; and if

you believe that while this state of things existed, James M. abandoned his homestead; then, after his abandonment of the land as a homestead, it became liable to be levied on and sold for his debts; and if all these things are so, then the levy, sale and sheriff's deeds, which have been read in evidence, vest a good title in the plaintiff Shropshire, and you will so find your verdict.

"4th. It is a rule of law that fraud must be proved, and can not be presumed. But this only means, that in order to authorize a jury to find that a transaction is fraudulent, there must be evidence either positive of the fraud, or circumstances from which fraud may be reasonably inferred.

"5th. The failure of a party to show payment of the purchase money, or to show how a transaction was made, when it lies in his power to do so, and where fraud is charged in relation to it, is one circumstance which a jury may properly consider as affording some evidence of fraud."

The defendant excepted to the foregoing instructions, because those given on the question of fraud were not authorized by the pleadings, nor by the facts of the case; and to the fifth instruction he specially excepted, because the deed from James M. Cox and his wife recited the payment of the purchase money, which was *prima facie* evidence of the fact.

Verdict and judgment for the plaintiff for the land sued for. The questions presented by the assignment of errors, sufficiently appear from the foregoing exceptions taken to the charge of the court.

*L. F. & W. Price* and *J. H. Robson*, for the appellant.—1st. It is submitted that James M. Cox and wife were necessary parties to this suit. It is alleged in plaintiff's pleadings that the deed from them to Isaac W. Cox was fraudulent, and that the same was executed with the intent to hinder and delay the creditors of James M. Cox in the collection of their debts. At the same time it is proved conclusively that, at the time of the sale and conveyance to Isaac W. Cox, the land in controversy was the homestead of his vendors. All the parties to a fraudulent conveyance are necessary parties in a suit to vacate or set it aside.

2d. The wife of Isaac W. Cox was a necessary party to this suit, because it appears clearly from the proof that the land in controversy has been held and occupied by them as their homestead ever since the date of the conveyance from James M. Cox and wife.

3d. The land in controversy being the homestead of James M. Cox and wife at the time of the sale and conveyance to Isaac W. Cox, was exempt from execution and forced sale. As such, its sale and conveyance for a valuable consideration " cannot be deemed a conveyance to defraud creditors, from whose claims there is a permanent, enduring exemption placed beyond the power of even legislative authority." (20 Tex. R., 247; 6 Tex. R., 102; 7 Tex. R., 13.)

4th. Even if the conveyance from James M. Cox and wife had been voluntary, it could not have been questioned by creditors, as their rights were in no wise prejudiced, the property being absolutely exempt from execution. (Story on Sales, 439, notes and authorities; 1 Story's Eq. Jur., § 367.)

5th. If the conveyance had been, on consideration not deemed valuable in law, yet if the vendee or donee really and *bona fide* remained in possession, the conveyance could not be taken to be fraudulent within our statute. In the present case, Isaac W. Cox remained in possession of the land from the time of the execution of the deed. (1 Tex. R., 350.)

6th. There was no evidence that Isaac W. Cox ever held possession of the land in controversy, otherwise than as the *bona fide* owner thereof, and the third charge of the court was unauthorized by the proof.

7th. If we were to admit, without the shadow of proof of the fact, that Isaac W. Cox held the possession of the land as agent, and in secret trust for J. M. Cox and wife, then we say that it has never yet been liable to execution for J. M. Cox's debts, because there is no evidence that he ever acquired or attempted to acquire a homestead elsewhere. " If," says Chief Justice Hemphill, " we admit that an old homestead may, in opposition to this rule with regard to the change of domicil, be abandoned before the acquisition of a new one, it can only be on the most clear and

conclusive facts of abandonment of the homestead with an intention not to return. An old domicil can not be forfeited without conclusive proof that a new one has been acquired. If an old homestead can be lost without proof that a new one has been gained, certainly the circumstances to show abandonment must be most clear and decisive." (20 Tex. R., 29.)

In the present case, the testimony is, that shortly after the conveyance to the appellant, Cox and his wife moved into Hill county, and, as the witnesses understand, have been living there ever since. If they had acquired a new homestead in Hill county, it would have been a very easy matter for the appellee to have proved it, and the absence of evidence on this point raises a strong presumption that no new homestead had, in fact, been purchased. Nor is there any evidence of abandonment of the old homestead, except the naked fact of absence from the county in which it was situated. Neither Cox or his wife is ever heard to assert that they had abandoned the county of Fayette, or that they did not intend to return to it.

8th. The question naturally occurs in this case, what inducement could James M. Cox and wife have to execute a conveyance (as it is alleged they did) to Isaac W. Cox for their homestead, which was exempt from execution, and was not liable for the Hosmer debt? What motive could they have for making the conveyance, unless it was a *bona fide* transaction? Why enter into a fraudulent collusion with Isaac W. Cox, as it is alleged they did, making him their trustee to hold property for them in secret trust to shield from their creditors what the mantle of the constitution protected from their grasp? Had they a new homestead in view, and did they wish to hold *that* and the old one, at one and the same time, and reap the profits of both? Is this the inference which the plaintiff would wish to be deduced from the allegations of his petition, and from the facts of the case? If it is, he is peculiarly unfortunate in having not only failed to prove a single feature of fraud in the execution of the conveyance to Isaac W. Cox, and in the character of his possession, but also in having failed to show that, after four years' residence in the county of Hill; they had acquired a new homestead, *the only possible*

ground for the mysterious contrivance which plaintiff alleges was entered into and concocted by the parties.

9th. The 5th charge of the court was erroneous; first, because the recital in the deed that the purchase money had been paid is *prima facie* evidence of that fact. Second, because the rule laid down in the charge of the court is an unsafe one, and was calculated to mislead the jury. It is very seldom the case that in a *bona fide* conveyance of land the grantor and grantee call in witnesses to see that the purchase money is paid. Neither James M. Cox nor his wife could have been witnesses for the appellant to prove that a valuable consideration had been paid by him, for in their deed of conveyance they warrant the title to the land, and it does not appear from the record that any other person was present when the deed was executed. It does not appear then that it was in the power of the defendant to make the proof alluded to in the charge of the court, and the charge was therefore unauthorized by the testimony. Third, even if the charge were true in the abstract as applicable to ordinary conveyances, it is not the law applicable to the present case ; because, the homestead being exempted from execution and forced sale, a voluntary conveyance of the same by an insolvent debtor could not prejudice the rights of creditors, and the mere fact of the conveyance of such property being voluntary, would not of itself be even a badge of fraud. (Story on Sales, 439, note and authorities; 1 Story's Eq. Jur., sec. 367.)

10th. There is no evidence that the wife of Isaac W. Cox participated in the alleged fraud between her husband and James M. Cox and wife. The conveyance of itself was good as between the parties, and so far as *she* is concerned it is good as against creditors. In the case of North v. Shearn this court says the homestead "is not intended for the sole benefit of the husband, or head of a family. The wife, at least, has an equal interest in the exemption of the homestead, and it is not proposed to prove that she had been a participant in any intentional fraud practiced upon the plaintiff." (15 Tex. R., 176.)

Even if it were admitted (without a scintilla of proof of the fact,) that Isaac W. Cox was holding the land in secret trust for

James M. Cox, with the view of defrauding the creditors of his brother, it is no where alleged in the pleading, and it no where appears from the testimony, that his wife was holding possession of the land otherwise than as the rightful owner of a homestead under a regular deed of conveyance. (15 Tex. R., 176; 20 Tex. R., 247; 20 Tex. R., 782.)

*W. R. Jarmon* for the appellee.—"It is for the jury to determine from the facts and testimony in a cause, whether the intention of the parties was fair and *bona fide* at the time of the sale, or was fraudulent." (Bryant v. Kelton & Uzzell, adm'rs, 1 Tex. R., 415.)

" A question of fraudulent intent is one of fact, to be submitted to the jury; and they are the judges of the weight and amount of 'testimony necessary to sustain it." (Biscoe v. Bronaugh, 1 Tex. R., 326.)

This court has so often decided that they would refuse to reverse a case where the testimony was conflicting, that it is unnecessary to refer to the decisions upon that point. The appellee in his original petition charges that the conveyance under which J. W. Cox, the appellant, claimed to hold this land, was fraudulent and void. Again, in his amended petition and replication, filed December 3d, 1856, he repeats the fraud and nullity of appellant's pretended title, and expressly charges that no consideration ever passed between the Coxes for the land, and that the land was still J. M. Cox's. With what kind of evidence does appellant meet this charge? We answer, none. He says his *deed* is *prima facie* evidence that he paid for the land. This court has said :

" The failure of a party to produce testimony which might reasonably be supposed to be within his power to explain or rebut circumstances of suspicion, strengthens the presumption arising from those circumstances. (Thompson's adm'r v. Shannon *et al.*, 9 Tex. R., 536.)

" Where suspicious circumstances are proven, it is incumbent on the party denying the fraud, to show the consideration given for the property." (Smarts *et ux* v. Waterhouse, 6 Humphrey, (Tenn. R.) 158–59.)

In cases of innocent purchasers without notice, it is incumbent on the party setting up such a plea, not only to allege the payment of the purchase money before notice, but to prove it, and the recital in the deed is not sufficient for that purpose. (Sugden on Vendors, top p. 344 to end of volume, and authorities there cited; 2 Daniels Chancery Pleading and Practice, top p. 802 to 809; Story's Equity Pleading, 805 to 810.)

This court has decided that a homestead once acquired, remains so until another is acquired; and that any temporary absence is not sufficient to deprive a party of his homestead. (Franklin v. Coffee, 18 Tex. R., 413; Stone v. Pryor, 19 T. R., 371; Shepherd v. Cassidy, 20 T. R., 24; Gouhenant v. Cockrell, 20 T. R., 96.)

"A purchase of property with knowledge that the vendor is selling to hinder, delay, or defraud his creditors, although for a valuable and adequate consideration, is void as against creditors." (Walcott v. Brander, 10 Tex. R., 419; Mosely v. Gainer, 10 Tex. R., 393; Edrington v. Rogers, 15 Tex. R., 188; Hancock v. Horan, 15 Tex. R., 507.)

In this case, there is neither an adequate, or valuable, or any consideration proved, or attempted to be proven. This court has heretofore decided that an abandonment of the State *animo remanendi*, will deprive the party of the homestead right. (Jordan v. Goodman, 19 Tex. R., 273; Trawick v. Harris, 8 Tex. R.)

Where a party *abandons* his homestead, the causes for his protection in its enjoyment cease. There is no more reason why a fraud may not be practised in claiming a homestead, than any other species of property.

WHEELER, C. J.—There is nothing in the objection that James M. Cox and his wife, the defendant's alleged vendors, were not made parties to the suit. There is no objection that they were not made parties in the court below, nor were they necessary parties to the suit to try title. That one of the parties to an action of trespass to try title claims under a deed alleged to be void, has never been deemed to require that the vendor in the deed be made a party.

On the question of the abandonment of the homestead by James M. Cox and his wife, we think there can be no room to hesitate. Independently of the deed of conveyance to the defendant, we think the evidence sufficient to warrant the jury in finding the fact of abandonment. But the deed is evidence certainly of a very decisive character to show that the grantors had relinquished their title, and no longer had any claim to the property as a homestead. If a real transaction, it divested the grantors of their right; if simulated, it is not for the parties to the deed to allege its nullity for their own advantage. It certainly is not for the defendant, who rests his defence upon the alleged conveyance, to object to the plaintiff's title on the ground that the right remained in his alleged vendors, who had assumed to relinquish both the right and the possession. On the question of the abandonment or relinquishment of the homestead by the defendant's alleged vendors, we think the evidence amply sufficient.

The true and controlling question in the case was not whether the deed, under which the defendant claims title, was void as to creditors within the purview of the statute of frauds, but whether, in point of fact, it was made to pass, and did pass the title as between the parties thereto, or whether the alleged sale and conveyance was merely simulated, and contrived and intended to enable the grantee to hold the property for the grantor after he had chosen to abandon it as his homestead, and thus protect it from the claims of creditors. If there was an actual sale or transfer of the property, as between the parties to the conveyance, it can not be avoided on the ground that it was fraudulent as to creditors; because it would not withdraw from their reach any property which the law had not already withdrawn from them. The creditors could acquire no claim upon the homestead, to subject it to the satisfaction of their demands, while it remained the homestead. It was effectually withdrawn from their power by the law. The sale, or voluntary conveyance of it, would, in no way, affect their existing rights and remedies; and, as has been said, it would be a strange anomaly to hold that to be a fraud upon creditors, which, in no respect, varied their rights or remedies. Hence, it has been held in England that, in order to make even a voluntary convey-

ance void as to creditors, it is indispensable that it should transfer property which would be liable to be taken in execution for the payment of debts.    (1 Story's Eq., § 367; Wood v. Chambers, 20 Tex. R., 247.)   A conveyance of property which is exempt by law from execution or forced sale, can not be a fraud upon creditors.    Such a conveyance is not within the purview of the statute of frauds.    If, therefore, the deed under which the defendant claims, was really intended to  operate a transfer of the property, as between the parties thereto, it is immaterial whether it was upon consideration, or voluntary, it was in no way injurious to the rights of creditors, and can not be deemed to have been in fraud of their rights.    It cannot be impeached upon that ground.    But if, on the contrary, there had been no  actual transfer of the property as between the parties; if the deed, or pretended transfer, was simulated and colorable merely, made upon a secret trust that the vendee should hold the property for the vendor after the latter had abandoned the use of it as a homestead, a mere pretence and contrivance to protect the property from the claims of the creditors of the vendor after, by its abandonment as a homestead, it had become liable to be taken in execution; if, in fine, the conveyance was not intended to be operative as between the parties, and did not pass the title, the property, of course, remained in the vendor, and was liable to be taken in execution for his debts.  Whether such was the real character of the transaction, was the question in this case.    That was the issue presented by the pleadings, and the question distinctly submitted by the court to the jury for their decision.    Accordingly, the jury were instructed that if the land in question was the homestead of James M. Cox, at the date of the deed to Isaac, in September, 1854, and if Isaac purchased the land, and the deed was executed in September, 1854, as it purported, and Isaac had lived on the land as his homestead since his vendors left, the plaintiff could not recover.    There was no question that the defendant had so lived upon the land, and under this charge, if the jury had believed the alleged purchase a verity, and that the deed had been in part executed purposely to pass the title, they must have found for the defendant.  The court further instructed the jury that if there was no sale of the land

but the pretended sale, and the subsequent possession of the defendant was a mere fraudulent device or scheme to enable Isaac to hold the land for James, and protect it from his creditors, and that James had abandoned his homestead, then, after its abandonment as a homestead, it became liable to be levied on and sold for his debts. The decision of the case was thus placed upon the true ground, and made to turn upon the question whether there had been an actual transfer of the property, or only a pretended transfer.

The jury were instructed as to what constituted an abandonment of the homestead, as fully and favorably to the defendant as the facts required; and upon this point, as we have seen, the case is free from difficulty.

The only part of the charge of the court to which there is any apparent ground for the appellant to object, is the concluding observation respecting the inference which may be drawn from the failure of a party to introduce explanatory evidence concerning a transaction charged to be fraudulent, when it is in his power to explain. We do not think this observation of the court can have mislead the jury, or occasioned any injury to the appellant. It was not an error of law, and can scarcely be deemed a charge upon the weight of evidence. It was not unjust in itself, or when considered in its application to the case. As an abstract ques tion, as we have seen, it was not material whether the alleged conveyance was upon a consideration, or voluntary, and consequently it was not material to prove the payment of the purchase money. But in reference to the pleadings and the evidence conducing to show a want of honesty and fair dealing in the parties to the transaction, it might have been very material to the defendant to prove that he had actually paid, or contracted to pay, for the land, or to produce some evidence to show that the alleged sale was real, and not simulated. The defendant had alleged a purchase of the property for a valuable consideration. This allegation was traversed specially by the plaintiff, and he averred that no consideration in fact passed, but that the pretended deed was a sham, and the pretended sale was collusively and fraudulently made, for the purpose of concealing the title to the property, and that no

title really passed to the defendant thereby, but the title remained in the pretended vendor. The defendant was thus fully apprised of the distinct ground on which his title was impeached. If he had really purchased the land for a valuable consideration, as he alleged, it is scarcely to be supposed that he could not have produced some evidence of it, or of the real nature of the transaction. That he failed to do so, and relied solely on his deed, notwithstanding the allegations and evidence by which it was impeached as fraudulent, was certainly a circumstance proper for the consideration of the jury, in connection with the evidence in the case. The natural and reasonable inference would be unfavorable to the reality and verity of the alleged purchase, and the honesty of the transaction. That the attention of the jury was called to the position which the defendant occupied, and they were apprised of the circumstances which it was proper for them to consider in arriving at a conclusion upon the issue presented for their decision, can scarcely be deemed a wrong or injury to the appellant, or a ground for reversing the judgment. We do not think there was anything in the charge of the court calculated improperly to influence the minds of the jury to the prejudice of the defendant. The true issue in the case and the law applicable to it was so clearly presented, that it is scarcely possible that a jury of ordinary intelligence could have found a verdict for the plaintiff, unless satisfied that the alleged purchase was simulated, and that the title did not, in fact, pass by the deed as between the parties, but was held by the defendant in secret trust for his alleged vendor. There certainly was evidence tending to that conclusion. The fact that the deed, though made in September, 1854, was held back and not recorded until the result of the suit against the alleged grantor was known; the statement of the defendant that the land would be his when it was paid for, made, it seems, after the deed purported to have been executed, and when, if there was no secret understanding between the parties inconsistent with the purport of the deed, the land was his; the failure of the defendant to produce any evidence confirmatory of the allegation of a purchase, or of the fairness of the transaction; and the relationship of the parties, though unimportant in themselves, taken

singly, yet when taken collectively, in connection with the ample proof that the alleged grantor was acting fraudulently and endeavoring, professedly and within the knowledge of the defendant, to convey away his property in order to place it beyond the reach of an execution upon the judgment under which the plaintiff purchased, must be regarded as evidence conducing to support the verdict. Considering the difficulty of obtaining direct evidence in a case of this nature, and looking to the whole evidence before the jury, we can not say that it was not sufficient to warrant the verdict.

We are of opinion that there is no error in the judgment, and that it be affirmed.

Judgment affirmed.

Mr. Justice Bell having presided in this case, did not sit.