SEAGREEN v. WENDLER et ux.

(Third Division. Valdez. August 4, 1917.)

No. 784. ·

1. FRAUDULENT CONVEYANCES ⬤══95(2)—HUSBAND AND WIFE.

Where the wife claims to have earned the money to purchase property claimed by her as against creditors of her husband, and the evidence shows that the husband furnished the provisions, fuel, etc., and it is impossible to determine how much each contributed, the husband in materials and the wife in labor, and the evidence also shows the husband was engaged in conducting quite a large brewery business from which he had a much larger income than this property brought in, *held*, the transfer to the wife was in fraud of creditors.

2. FRAUDULENT CONVEYANCES ⬤══104(2)—HUSBAND AND WIFE.

Transactions between a husband and wife, prejudicial to the husband's creditors, will be closely scrutinized, to see that they are fair and honest, and not mere contrivances resorted to for the purpose of placing the husband's property beyond the reach of creditors.

3. FRAUDULENT CONVEYANCES ⬤══52(1)—HOMESTEAD.

It may be stated as a general rule that fraud cannot be predicated upon the disposition of the homestead. Being exempt, the creditor is not injured by a conveyance or transfer thereof. But the transfer of the homestead from the husband to the wife is a fraud upon creditors where it is not the bona fide intent to invest the wife with the real ownership, but to put it beyond the reach of the husband's creditors, in the event of their removal from the homestead.

September 16, 1910, the plaintiff, at the request of A. J. Wendler, who was president and manager of the Valdez Brewing & Bottling Company, loaned said company the sum of $1,000, payable one year after date, with interest. The note was signed by said company, by A. J. Wendler, its president and manager, also by A. J. Wendler, individually, and J. C. Deiringer, who was secretary of the company at that time. Two thousand shares of the stock of the company was delivered to plaintiff as security for said note, but it is shown by the evidence that said stock did not have then and has not now any value. Of the 21,000 shares of stock issued by said company, the said A. J. Wendler, defendant in this case, was owner of three-fourths and practically controlled and managed

said company and all its affairs. When the said note became due, plaintiff demanded payment and was put off from time to time by said Wendler, who paid the interest thereon up to the year 1915.

Suit was brought on said note, and judgment rendered in favor of the plaintiff and against said Valdez Brewing & Bottling Company, Wendler, and Deiringer, on the 8th day of March, 1916. On the 10th day of April, 1916, execution was issued on said judgment and returned by the United States marshal wholly unsatisfied; he being unable to find any property belonging to said Valdez Brewing & Bottling Company or Wendler or Deiringer.

This action is brought to set aside a conveyance of a house and lot in Valdez, made by said A. J. Wendler to his wife, Florence Wendler, on March 26, 1911, and subject same to the payment of plaintiff's claim herein, on the ground that the said conveyance from A. J. Wendler to his wife was fraudulent, without consideration, and made to hinder, delay and defraud creditors, and particularly the plaintiff herein, in the collection of his debt.

Defendants by their answer deny that said conveyance and transfer of said property to Florence Wendler was fraudulent, but allege that said lot was bought with her own separate money, and that her husband, A. J. Wendler, acted as her agent only in matters connected with such transaction.

Upon the trial of the case, and after the plaintiff had produced his witnesses and rested his case, the defendants asked leave to amend their answer by setting up that the said property so conveyed by Wendler to his wife was a homestead, and actually used by them as a homestead from November, 1910, to June, 1915, and this amendment was permitted.

Donohoe & Dimond, of Valdez, for plaintiff.

Lyons & Ritchie and J. L. Reed, all of Valdez, for defendants.

BROWN, District Judge. "Transactions between a husband and wife, prejudicial to the husband's creditors, will be closely scrutinized, to see that they are fair and honest, and not mere contrivances resorted to for the purpose of placing the husband's property beyond the reach of creditors." 20 Cyc. page 603.

The defendants in this case claim that the property was purchased with money belonging to the wife, which she earned by keeping boarders. If this be true, the law seems to be that, where the husband furnishes the supplies for the wife, she cannot regard such earnings as her separate property. 21 Cyc. 1396, 1397; Bloodgood v. Meissner, 84 Wis. 452, 54 N. W. 772; Hamill v. Henry, 69 Iowa, 752, 28 N. W. 32.

It is true that section 490, Compiled Laws of Alaska, provides that:

"All property, either real or personal, acquired by any married woman during coverture by her own labor shall not be liable for the debts, contracts, or liabilities of her husband," etc.

Still, in this case, where it is conceded that the husband furnishes all of the provisions, fuel, etc., it would be impossible to separate the items, so as to show how much each contributed, the husband in materials, and the wife in labor, and the defendants have not attempted to explain the true situation in this regard. In any event it is incumbent upon her to point out definitely and give a clear and precise account of the matters and items involved in the transaction.

"Under such circumstances the defendants ought to be able to point out definitely the various items going to make up the alleged indebtedness. As said by Mr. Justice Thayer in Marks v. Crow, 14 Or. 382, 13 Pac. 55: 'Any other rule, where property has been shifted from one member of a family to another, and creditors left unprovided for, would lead to the most flagrant frauds. The creditors could not show that the indebtedness claimed to be the consideration of the transfer did not exist. They could do no more than to inquire when and under what circumstances it was created; and, unless the recipient of the property could give a clear and precise account of the items constituting it, they should have the right to ask the court to infer that it was a sham and pretense; otherwise property might be put beyond the reach of creditors with impunity.' Fraudulent intent is a question of fact, but it is agreed that it may be inferred from the facts and circumstances surrounding the transaction. It sometimes—and often, indeed—happens that the surrounding circumstances quite as satisfactorily explain the true inwardness of the transaction, and import knowledge of its object or of the intended fraud, as any other character of testimony." Bank of Colfax v. Richardson, 34 Or. at page 542, 54 Pac. at page 366 (75 Am. St. Rep. 664).

In my opinion the defendants have failed to meet this requirement. The wife testifies that she kept boarders about "all" the time. Her husband, Wendler, testifies that she was

sick and outside in the state of Oregon with her mother part of the time. She further testifies that she got $20 to $30 a month for board, but does not attempt to give any clear or definite account of the amount of money she earned in this manner, and what profit, if any, there was. Mrs. Wendler in one place says she borrowed money ($250) from a Mr. Blackwell (now deceased) to pay for the house put on said lot. In another place, in answer to further cross-interrogatory No. 25, she says she gave her husband $250, which she borrowed from Blackwell, to pay for the lot. This lot was deeded to the defendant A. J. Wendler by Lena A. Von Gunther on the 8th day of June, 1910, and he testifies that he paid the sum of $300 therefor, in installments of $30 a month, and the same was his wife's money, and given to him by his wife.

The testimony shows this residence to have cost only a few hundred dollars, and the basement thereof was leased to said Valdez Brewing & Bottling Company for $40 a month. This $40 per month is charged against said company in the account of Wendler, from 1911 to 1913, in the only book produced in evidence belonging to said company. In a few of these items, over the charge for rental of $40 per month, appear the initials "Mrs. A. J. W."; but in a majority of the items it is merely carried as rent in the account of A. J. Wendler with the company. Mr. Wendler, being asked if said account did not so appear in the books of the company, denied it, and said that the rental was charged to said company by his wife, but never paid to her. He was also asked if he owed the company, or the company owed him, when he resigned as president and manager of said business in June, 1915, and he stated that the company owed him, but did not state in what amount. If it had been any considerable amount, it seems natural that he would have stated it.

Wendler seems to have been pretty much the whole Valdez Brewing & Bottling Company. He owned three-fourths of the stock, and was getting a salary of $225 a month, in addition to the $40 per month rental for the basement of said residence, and also 10 per cent. on collections made by him for beer sold. The testimony of J. C. Deiringer shows that during the said period of about five years there was $90,000 worth of beer sold, 10 per cent. of which would amount to $9,000. Even allowing a considerable discount from this, it would seem that Wendler was getting $300 or $400 per month out of this busi-

ness, and he is the only one that ever did get anything out of it, and it was bankrupt and insolvent when he left it.

When the Wendlers left Valdez in June, 1915, they moved to Anchorage, where a business was immediately opened in partnership with one Ray Larson, a store building erected, and a thriving and successful business carried on in the name of Wendler & Larson; the defendants claiming that the wife, Florence Wendler, is the sole owner of one half interest and Ray Larson the other half. The plaintiff in his complaint alleges that the said business belongs to Wendler, and he was carrying it on under cover of his wife's name. Said business is of a considerable value, but Florence Wendler refused to answer questions propounded to her on cross-examination concerning the value thereof. This evidence was admitted on the theory that other transactions between the husband and wife alleged to be fraudulent as to creditors were competent and admissible as bearing upon the question of intent in the conveyance in question in this case.

I am not at all satisfied with the bona fides of the transaction. The defendants have not made a clear and definite explanation of the transaction and who paid the consideration therefor; but, on the contrary, I find their testimony to be contradictory and inconsistent, and not in accord with that fairness and openness that ought to characterize dealings between husband and wife, where it affects the rights of third persons. I am therefore compelled to believe that the said property was acquired with funds belonging to said A. J. Wendler, and that he transferred it to his wife with the sole purpose of getting the property out of his own name to hinder and delay creditors, particularly this plaintiff, who put his own hard-earned cash into the business, from which Wendler and his family seem to have been the only beneficiaries.

Every person is presumed to intend the natural and probable consequences of his acts. The natural consequence of this act was to prevent the collection of plaintiff's claim, which was highly prejudicial to him. This brings us to the question of the homestead right set up by defendants in the amendment above stated.

Upon this question I do not find that the testimony supports said allegation. Under section 1104, Comp. Laws Alaska 1913, a homestead of any family, or the proceeds thereof, shall be

exempt from judicial sale, etc. One may have several tracts of land, houses, or homes; but only the one which he actually designates, points out, and selects as provided by law, can be claimed as such. This is not usually done until some process is sought to be executed against the property, when the debtor is permitted to claim such exemption. While the testimony of defendants shows that they resided on this property, they do not testify that it was the only home they had. The testimony of the witness Deiringer shows that some time in the year 1910 the defendant A. J. Wendler told him that his wife, Florence, was going home to Canyon City, Or. It is not shown that defendants ever claimed this property as their homestead, and they do not testify that it was. But, even if it could be reasonably inferred from the whole testimony in the case that this property was, at the time of said transfer or conveyance, the home and the homestead, exempt from execution, and therefore the creditor could not be injured by the conveyance thereof, even without any· consideration, such transfer, to be sustained, must be bona fide, with the honest intent and purpose to vest the entire estate in his wife.

In this case I am forced to the belief from all the evidence that the defendant A. J. Wendler was conducting a more or less precarious business in said brewing and bottling works, and that he intended to evade the payment of the just indebtedness due. the plaintiff; that he made the conveyance to his wife for such purpose, in the event of their leaving said home; and that the real ownership was to remain with himself. It is not claimed now that the property in controversy is a homestead because it was abandoned as such in November, 1915, nearly two years ago.

It may be stated as a general rule that fraud cannot be predicated upon the disposition of the homestead; the same being exempt, the creditor could not subject the same to the satisfaction of his claim, and is therefore not injured or prejudiced by a conveyance or transfer thereof, and numbers of authorities are cited by defendants in support of this rule.

There is, however, another line of cases, which seem to be more in point in this case, holding that the transfer of the homestead from the husband to the wife is a fraud upon creditors, where it is not the bona fide intent to invest the wife with the real ownership, but to put it beyond the reach of the hus-

band's creditors, in the event of their removal from said homestead.

In the case of Kettleschlager v. Ferrick, 12 S. D. 455, 81 N. W. 889, the court says:

"Contrary to the view of the trial court, conditions may possibly arise which render a deed to the homestead fraudulent and void as to creditors, although their rights be postponed until the debtor and his family have no further occasion to occupy such premises, and have, in accordance with the intent that prompted the transfer, removed therefrom to a homestead subsequently acquired, and into the purchase of which nothing of value from the original homestead has entered. It would be a plain perversion of the homestead law to hold that the husband may convey the legal title of the homestead to his wife, without consideration, for the purpose of enabling him to withhold the same from creditors, should the family thereafter remove to a new home, purchased with other funds, and itinerancy would be the pernicious result of such a doctrine, instead of the establishment of a permanent home. It has been noticed that the fraudulent intent to have the wife hold the land for the benefit of her husband, after they had abandoned its occupation as a homestead, was fully carried out. If the premises were thereby placed beyond the reach of creditors, nothing can prevent the perpetration of future frauds of similar character, whenever they may so desire, resulting in the acquisition of numerous farms, while the real owner thereof remains execution proof. The following cases, in perfect harmony with reason, equity, and public policy, hold that a homestead conveyed by a husband to his wife, not really to pass title, but to defraud creditors, will not be protected from them as her property, after their homestead immunity has ceased. Rives v. Stephens (Tex. Civ. App.) 28 S. W. 707; Cox v. Shropshire, 25 Tex. 113; Baines v. Baker, 60 Tex. 139; Taylor v. Ferguson (Tex. Sup.) 26 S. W. 46. As pertinent to the principle here involved, we cite Currier v. Sutherland, 54 N. H. 475 [20 Am. Rep. 143]. Although the real estate in question was a homestead when the deed was executed, the design and effect of the conveyance was to actually prejudice creditors, because they might, but for the transfer, subject the premises to the payment of their claims, whenever the same were abandoned, and another homestead acquired. As a general proposition, a conveyance without consideration, from the husband to the wife, cannot stand, if the creditors are injured thereby. Woods v. Allen [109 Iowa, 484] 80 N. W. 540. True it is, as a general rule, that creditors are not injured by the conveyance of the homestead without consideration; but when the transfer is such that the property has not ceased to belong to the grantor, and the homestead right thereto has been abandoned both by the grantor and grantee, and another homestead acquired by them independently of the former, the statutory exemption right, thus fraudulently impressed with a secret trust, ceases to exist as to the premises first occupied, and a creditor made such by the wrongful act of the parties to such deed has the right to interfere. For the comfort and pro-

5 A.R.—46

tection of the debtor and his family the homestead right was created, but not as an instrument by which to defraud either existing or future creditors."

I am not unmindful of the equitable consideration due the family as to the highly beneficent homestead right, but in this case I feel that, instead of the defendants being deprived of any such right, the equities are all the other way, and that they have acquired property out of the bankrupt Brewing Company from which they are now maintaining a profitable and successful business, and seeking to deprive plaintiff of the payment of his just and meritorious claim. In this connection it may be noted that the $40 per month, which from the books of the company appears to have been collected by the defendant A. J. Wendler for rental of the basement of said residence, is not claimed by the wife to have been received by her, although it is likely that this amount considerably exceeded any profits she could have made from keeping the few boarders testified to by her.

This is a case peculiarly directed to the equity side of the court, and from a most careful consideration of all the testimony, and the weight to be given to it, I can come to no other opinion than that the conveyance was fraudulent in fact and in law, and it will be set aside for the purpose of enabling the property to be subjected to the claim of the plaintiff in this case.

Findings and decree may be prepared accordingly.