## BANK OF COLFAX v. RICHARDSON.

[54 Pac. 359.]

1. COLLATERAL ATTACK ON JUDGMENT.—The record of the proceedings of a superior court cannot be collaterally attacked for errors or irregularities appearing on its face, unless they affirmatively show an absence of jurisdiction.

2. JURISDICTION BY ATTACHMENT—NONRESIDENT.—In Oregon the preliminary seizure of the property of a nonresident in an action on a money demand is not a statutory prerequisite to jurisdiction; that requirement is entirely judicial.

3. JURISDICTION OVER ATTACHED PROPERTY OF NONRESIDENT.—In an action against a nonresident on a money demand, the actual seizure of property of the defendant under a lawful writ of attachment issued in such action confers jurisdiction over the property seized, as against a collateral attack, though there may be errors in the attachment proceedings, or in determining the liability of the property for the plaintiff's demand.

4. ACQUIRING JURISDICTION IN ACTIONS AGAINST NONRESIDENTS.—Under a system where the attachment is merely auxiliary to the main action, and the proceedings are the same against both resident and nonresident debtors, the authority to proceed to judgment depends upon the personal or constructive service of the court's process, and upon the actual seizure of the property to be affected by the judgment, and not upon the regularity of the attachment proceedings, or of any step after the service of the process.

5. COLLATERAL ATTACK ON JUDGMENT.—The judgment of a superior court against a nonresident acquired by a publication of summons cannot be attacked collaterally for any defect in the attachment proceedings, if such proceedings are not made by statute jurisdictional, unless the record affirmatively shows a want of jurisdiction; that is, if the seizure was complete and the court had authority to pass on the cause of action, the judgment is conclusive on the world, regardless of all irregularities or defects in the attachment or other proceedings.

6. COLLATERAL ATTACK—ISSUING SUMMONS BEFORE WRIT.—A judgment *in rem* against attached property in Oregon is not subject to collateral attack because the record does not affirmatively show that a summons was issued in the action at or before the issuance of the writ of attachment.

7. RETURN ON ATTACHMENT—LEAVING IN CONSPICUOUS PLACE.—Though Hill's Ann. Laws, § 149, provides that real property shall be attached, if there be no occupant, by leaving a copy of the writ in a conspicuous place thereon, it is enough, as against collateral attack on the resulting judgment, for the return to recite that the copy was left in a conspicuous place, without pointing out the place: *Hall* v. *Stevenson*, 19 Or. 153, distinguished.

8. RETURN—OWNERSHIP OF ATTACHED PROPERTY.—The omission of the return of a levy of attachment upon real property to state that the property attached was the property of the defendant in the writ, does not render it subject to collateral attack.

9. LEVY OF ATTACHMENT—ABSENCE OF OCCUPANT.—A return on a writ of attachment reciting that when the writ was served there was "no occupant thereof on the premises," should be construed to mean that the place was entirely unoccupied, rather than that the premises were actually occupied, but that the occupant was temporarily absent at the time of the officer's visit.

10. IDEM.—Under Hill's Ann. Laws, § 149, providing that real property may be attached by leaving a copy of the writ in a conspicuous place thereon, if there be no occupants, a valid attachment of real property may be made by leaving a copy of the writ in a conspicuous place thereon, if the officer at the time of visiting the land for the purpose of attaching it cannot find any one visibly in possession.

11. LEVY OF ATTACHMENT—LEAVING A COPY OF WRIT.—A return of an officer that he attached real estate by "posting" a copy of the writ in a conspicuous place thereon sufficiently shows, as against a collateral attack on a judgment, the "leaving" of a copy in such place.

12. OWNERSHIP OF PROPERTY BY DEFENDANT—AFFIDAVIT FOR ATTACHMENT.—An affidavit on which was based an order for publication of a summons sufficiently shows, as against collateral attack, that the nonresident defendants had property in the state, by a recital that the attachment was levied "on certain real property of the defendants, in B. County, Oregon:" *Pike* v. *Kennedy*, 15 Or. 420, cited.

13. AFFIDAVIT FOR ATTACHMENT—RESIDENCE OF DEFENDANTS.—An affidavit for publication of summons sufficiently shows, as against collateral attack,

that defendants could not be served in the state, by a statement that they reside in the State of Washington, and that at the time of making the affidavit they were not in Oregon: *Pike* v. *Kennedy*, 15 Or. 420, cited.

14. ORDER FOR PUBLICATION—RETURN OF "NOT FOUND."—A return of a summons "not found" is not a prerequisite of an order for service by publication, since Hill's Ann. Laws, ¿ 56, merely requires that the inability to serve the defendant within the state shall appear by affidavit. The provision of section 59, that when it appears by the return that defendant is not found the plaintiff may deliver another summons to be served, or may proceed by publication, does not modify section 59: *Goodale* v. *Coffee*, 24 Or. 346, cited.

15. ORDER FOR PUBLICATION—MAILING SUMMONS "FORTHWITH."—Though Hill's Ann. Laws, ¿ 57, provides that the order for publication of summons shall direct that a copy of the complaint and summons be deposited "forthwith" in the postoffice, addressed to defendant, the omission of the word "forthwith" is not fatal to the proceedings, as against collateral attack, when it appears that the copies were mailed within a reasonable time after the date of the order.

16. MAILING OF SUMMONS "FORTHWITH."—A summons is mailed "forthwith," under Section 57 of Hill's Ann. Laws, if it is deposited in the postoffice on the day of the first publication, provided such publication is within a reasonable time, as, say, a week, after the date of the order.

17. PROOF OF SERVICE OF SUMMONS.—A judgment is not invalid on collateral attack simply because the proof of service of summons is not annexed to or indorsed on the summons itself.

18. WHO MAY MAIL A PUBLISHED SUMMONS—CERTIFIED COPY.—Proof of the deposit of a copy of the complaint and summons in the postoffice pursuant to an order of service of publication need not be made by the sheriff or a person specially appointed therefor, but may be made by any one except the party himself; nor is it necessary that the copy of the summons so deposited shall be certified.

19. JUDGMENT ROLL—SUMMONS.—A judgment is not void and subject to collateral attack because the original summons does not appear in the judgment roll, where the proof of publication of summons as well as the findings and recitals in the judgment show that a summons was in fact issued.

20. FRAUDULENT CONVEYANCE — ATTACHMENT.— Real property fraudulently conveyed by a debtor is as much subject to attachment as though the conveyance had never been made.

21. FRAUDULENT CONVEYANCE—BURDEN OF PROOF AS TO GOOD FAITH.—The burden is upon the defendants, in an action by creditors to set aside a conveyance from an insolvent debtor to his children, to point out definitely the various items going to make up the indebtedness constituting the alleged consideration for the conveyance, where the conveyance and the circumstances under which it was made bear the semblance of an attempt to cover up the property of the debtor: *Marks* v. *Crow*, 14 Or. 382, approved.

From Benton :   J. C. FULLERTON, Judge.

Suit by the First National Bank of Colfax, Washington, against A. C. Richardson and others to set aside certain deeds, and subject the property to certain alleged

judgments said to have been theretofore obtained by said bank against certain of the defendants. There was a decree as prayed, from which defendants appeal.

AFFIRMED.

For appellants there was a series of briefs and an oral argument by *Messrs. Lawrence Flinn, John Burnett*, and *Arthur L. Frazer*.

For respondent there was a series of briefs over the name of *Cox, Cotton, Teal & Minor*, with an oral argument by *Mr. Wirt Minor*.

MR. JUSTICE BEAN delivered the opinion.

This is a suit to set aside a conveyance from A. C. and Laura R. Richardson to their minor children of certain lands in Benton County, on the ground that it was made for the purpose of defrauding creditors, and especially this plaintiff. The complaint avers, in effect, that on April 21, 1894, the plaintiff commenced three actions in the Circuit Court for Multnomah County—one against the defendant, A. C. Richardson, another against him and his wife, Laura R. Richardson, and the third against him and one J. T. Dook—to recover upon promissory notes of the respective defendants, and caused the real property in question to be attached in each of such actions; that such proceedings were had therein that the plaintiff recovered judgments against the defendants, wherein it was ordered that the property attached be sold, and the proceeds applied to the payment thereof; that a few days before the commencement of such actions, and after the indebtedness upon which they were based had accrued, the defendants, A. C. and Laura R. Richardson, with intent to injure and defraud the plaintiff, and without any consideration, conveyed the premises in question to their

minor children, who are made defendants in this suit.
The answer puts in issue the material allegations of the
complaint, and alleges that the conveyance referred to
was made for a valuable consideration, and in payment
of a debt due from the grantors to the grantees. At the
time the several actions referred to in the pleadings were
commenced and the judgments therein rendered, the
Richardsons were nonresidents of the state, and service
of the summons was had upon them by publication.

The plaintiff, at the trial, to maintain the issues on its
part, and to prove the existence of the several judg-
ments and orders of sale as alleged, offered in evidence
copies of the complaint, affidavit, and undertaking on
attachment, writ of attachment and return thereon, affi-
davit and order for publication of summons, proof of
publication and of deposit in the postoffice, and the
judgment in each of such actions, to the admission of
which the defendants objected for the reasons that (1) it
does not affirmatively appear in either case, except in
the affidavits for an order of publication, that a sum-
mons was issued at the time or before the writ of attach-
ment ; (2) it does not appear that the writs of attachment
were served as required by law, or that the court ob-
tained jurisdiction to direct the service of the summons
by publication ; (3) it does not appear that the proceed-
ings for the publication of the summons were regular,
or that the summons was ever issued or served in the
manner required by law. These objections were over-
ruled, and the records admitted in evidence, and of this
ruling the defendants complain.

The argument in support of the first objection is that,
the judgments in question having been rendered against
nonresidents of the state upon service of the summons
by publication, the facts essential to the jurisdiction
must affirmatively appear upon the face of the record,

and, since an attachment of the property of a nonresident is, under the doctrine of *Pennoyer* v. *Neff*, 95 U. S. 714, a necessary preliminary jurisdictional step in such cases, the record must affirmatively show, even on a collateral attack, that all the requirements of the statute in reference to the issuance and levy of attachment have been strictly complied with ; and, as the writ cannot regularly issue before the summons (*White* v. *Johnson*, 27 Or. 282, 50 Am. St. Rep. 726, 40 Pac. 511), it is claimed that the judgments in question are void, because it does not affirmatively appear from any competent evidence that the summons had, in fact, been issued at the date of the writ.

1.  If this question were here on appeal from the judgments of the Circuit Court of Multnomah County, we might not find it easy to affirm them on satisfactory grounds ; but we occupy no such position.  The records are introduced collaterally as evidence to sustain the allegations of the complaint in the suit now pending, and we cannot, therefore, disregard them, or refuse to give effect to the judgments, on any other grounds than a want of jurisdiction in the court which rendered them. Any errors or irregularities in the records are of no avail in this proceeding unless they be such as show that the court had no jurisdiction.  Our inquiry, therefore, must be confined to the question as to whether the error alleged affects the jurisdiction of the court, and in its consideration it is proper to bear in mind that there is no statute of this state making the seizure under an attachment or otherwise of the property of a nonresident an essential or necessary jurisdictional prerequisite in an action against him.  We are not called upon, therefore, to consider the effect of the failure of the record in such an action to affirmatively show that all the statutory jurisdictional requirements have been complied with,

although even in such case the presumptions in favor of jurisdiction will often be sufficient to sustain the judgment when collaterally assailed : *Applegate* v. *Lexington Mining Co.*, 117 U. S. 255 (6 Sup. Ct. 742).

2.   The rule requiring the property of a nonresident in an action on a money demand to be seized under a writ of attachment, and thus brought under the control of the court, before any steps are taken looking to the publication of the summons, is wholly a judicial, and not a legislative, requirement.

3.   By the ruling in *Pennoyer* v. *Neff*, 95 U. S. 714, the proceedings in such an action, even if they conform strictly in every particular to the requirements of the statutes of this state, are ineffectual unless some property of the defendant in the state is brought, at the inception of the case under the control of the court, and subject to its disposition by a writ of attachment or other process adopted for that purpose ; and then only to the extent of adjudging that the property so seized is liable for the satisfaction of plaintiff's demand.   In other words, the effect of that decision is that an action against a nonresident, who is not personally served with process within the territorial limits of the court, or does not appear in the action, is substantially and to all intents and purposes a proceeding *in rem*, and therefore the property to be affected by the adjudication must be brought under the control of the court in the first instance by an attachment, or some other equivalent act.   The soundness of this doctrine is, of course, not to be questioned, but, in our opinion, its requirements are satisfied, and the court acquires sufficient jurisdiction of the *rem* to protect its proceeding from collateral attack, when the property of the defendant has been actually brought within the power and control of the court by a seizure under a lawful writ

of attachment issued in the action, although there may be irregularities, or even error, in the attachment proceedings.

4.   Under our system an attachment is merely auxiliary to the main action, and there is no difference in the proceedings thereon in an action brought against a nonresident, upon whom service is necessarily made by publication, and in one brought against a resident of the state, in which personal service is had.   In either case the proceedings on attachment have nothing to do with the merits of the cause of action or the jurisdiction of the court to try and determine the controversy between the parties.   If personal service is had, the cause becomes a mere action *in personam*, with the added incident that the property attached remains liable for any judgment the plaintiff may recover.   But, if service is had by publication, and there is no appearance for the defendant, the action is practically a proceeding *in rem* against the attached property, the only effect of which is to subject it to the payment of the amount which the court may find due the plaintiff.   Where no personal service is had, the *res* is brought within the power and control of the court by a seizure under a writ of attachment, but the right to adjudicate thereon is acquired only by the publication of the summons.   It is the substituted service, and not the seizure, which gives the court jurisdiction to establish by its judgment a demand against the defendant, and to subject the property brought within its custody to the payment of that demand.   In other words, the authority to hear and proceed to judgment depends upon the service of the process and the actual seizure of the thing to be concluded by the judgment, and not upon the regularity of the proceedings by which the control of the property was acquired.   When, therefore, the court has the *de facto* custody of the property by virtue of a *de facto*

writ of attachment, and a right to determine whether such property shall be subject to the payment of plaintiff's demand by virtue of constructive service of process, it has full and complete jurisdiction in the premises, and subsequent errors or irregularities in the proceedings will not be available on collateral attack. A judgment founded on service of process by publication is, of course, ineffectual unless it is an adjudication concerning property which the court has in its custody under some lawful process, because there is nothing upon which it can operate; but where the property has been actually seized and brought within the control of the court by some process authorized by law, and the right to determine its liability for the demands of the plaintiff is subsequently acquired by publication, an error of the court in determining the status of the property, or its liability, or the validity of the attachment, can, it seems to us, no more affect the jurisdiction, under a statute like ours, than an erroneous decision as to the amount of plaintiff's demand, or any other error in the case: Van Fleet, Coll. Attack, §§ 257, 838; *Paul* v. *Smith*, 82 Ky. 451; *Barelli* v. *Wagner*, 5 Tex. Civ. App. 445 (27 S. W. 17); *Thompson* v. *Eastburn*, 16 N. J. Law, 100; *Diehl* v. *Page*, 3 N. J. Eq. 143.

5. There is much conflict in the authorities generally as to whether the statutory prerequisites to the issuance of writs of attachment are jurisdictional, and must affirmatively appear to protect the proceedings from collateral attack, or whether, in the absence of any showing in the record to the contrary, it will be presumed that the steps necessary to vest the court with jurisdiction were taken. Mr. Waples states with apparent confidence that all the statutory requirements are jurisdictional, and are not to be presumed after judgment, even on a collateral attack, and cites a large number of cases

which more or less directly support the text (Waples, Attach. § 625); while Mr. Works, with equal confidence, says that, while there are authorities holding that such proceedings are special, and that no presumptions in favor of the jurisdiction of the court can be indulged, "the clear weight of authority and reason is to the contrary" (Works, Courts & Jur. p. 547); and this seems to be the view of Judge Van Fleet, as will be seen by reference to the citation from his work on Collateral Attack, already made.    An examination of the cases cited, however, will show that they are based largely, if not entirely, upon the peculiar provisions of the statute under consideration by the court, and it is therefore practically impossible to deduce from them any general rule upon the subject; and it is unnecessary for us in this case to attempt to do so, for, as we have already intimated, the necessity for an attachment, in the first instance, in an action brought in this state against a nonresident, is the outgrowth entirely of a decision of the Supreme Court of the United States, and not of any statute law or decision of this state; and we therefore feel justified in following the adjudications of that court to the effect, as we understand them, that the judgment of a superior court against a nonresident cannot be attacked collaterally for any defect in the attachment proceedings, where such proceedings are not made, by statute, jurisdictional, unless the record affirmatively shows a want of jurisdiction.

In the leading case of *Galpin* v. *Page*, 85 U. S. (18 Wall.) 350, in which it is held that, where a judgment of a superior court relating to a matter falling within the general scope of its powers is produced, jurisdiction will be presumed in the absence of an affirmative showing to the contrary, but if, in rendering the judgment, the court was not proceeding according to the course of

the common law, or the judgment is against a nonresident who was not personally served within the territorial limits of the court, and did not appear in the action, the authority for its rendition must appear upon the face of the record, Mr. Justice FIELD says (page 371) : "The qualification here made, that the special powers conferred are not exercised according to the course of the common law, is important. When the special powers conferred are brought into action according to the course of that law—that is, in the usual form of common-law and chancery proceedings—by regular process and personal service, where a personal judgment or decree is asked, or by seizure or attachment of the property where a judgment *in rem* is sought, the same presumption of jurisdiction will usually attend the judgments of the court as in cases falling within its general powers."

And this principle was applied in the case of *Voorhees* v. *Jackson*, 35 U. S. (10 Pet.) 449, in which the validity of certain proceedings in attachment against a nonresident were called in question collaterally on the ground that the record of the court in which the proceedings were had did not show that an affidavit for an attachment had been made and filed with the clerk before the writ issued, or that notice of the issuing of the attachment had been given by publication, or that the defendant had been called at three different terms of court, and the default recorded, or that the auditors had waited till the expiration of twelve months from the return of the writ before making the sale ; all of which were specially required in the act regulating the proceedings under attachment. Now, that was a case of a proceeding *in rem*, without jurisdiction over the person, where the record produced failed to disclose that certain provisions of the statute material for the protection of the defend-

ant's rights had been complied with, and it was argued by counsel there, as here, that all of these requirements were conditions precedent, which must not only be performed before the court had power to order a sale, but that such performance must appear in the record; but the court, in reply to this argument, said: "The provisions of the law do not prescribe what shall be deemed evidence that such acts have been done, or direct that their performance shall appear on the record.   *   *   * We do not think it necessary to examine the record in the attachment for evidence that the acts alleged to have been omitted appear therein to have been done.   Assuming the contrary to have been the case, the merits of the present controversy are narrowed to the single question whether this omission invalidates the sale.   The several courts of common pleas of Ohio, at the time of these proceedings, were courts of general jurisdiction, to which was added, by the act of 1805, power to issue writs of attachment, and order a sale of the property attached, on certain conditions.   No objection, therefore, can be made to their jurisdiction over the case, the cause of action, or the property attached.   *   *   * There is no principle of law better settled than that every act of a court of competent jurisdiction shall be presumed to have been rightly done till the contrary appears.   *   *   * If the defendants' objections can be sustained, it will be on the ground that this judgment is false; and that the order of sale was not executed according to law, because the evidence of its execution is not of record.   The same reason would equally apply to the nonresidence of the defendant within the state, the existence of the debt due the plaintiff, or any other creditor, which is the basis on which the whole proceedings rest."

Again, in *Cooper* v. *Reynolds*, 77 U. S. (10 Wall.) 308,

where a defect in an affidavit for a writ of attachment, as well as the premature issuing of the writ, was set up to defeat the title to land sold under a judgment in an action against nonresidents who had been served with summons by publication, it was held that jurisdiction of the *res* was attained by the levy of the writ, and that the errors and irregularities pointed out were of no avail on a collateral attack.     Mr. Justice MILLER, after discussing the essential principles underlying the jurisdiction of the courts in proceedings by attachment against nonresidents who are not served with process within the territorial limits of the courts, and do not appear in the action, says : "Now, in this class of cases, on what does the jurisdiction of the court depend? It seems to us that the seizure of the property, or that which, in this case, is the same in effect, the levy of the writ of attachment on it, is the one essential requisite to jurisdiction, as it unquestionably is in proceedings purely *in rem*. Without this the court can proceed no further ; with it the court can proceed to subject that property to the demand of plaintiff. If the writ of attachment is the lawful writ of the court, issued in proper form under the seal of the court, and if it is by the proper officer levied upon property liable to the attachment, when such a writ is returned into court the power of the court over the *res* is established. The affidavit is the preliminary to issuing the writ. It may be a defective affidavit, or possibly the officer whose duty it is to issue the writ may have failed in some manner to observe all the requisite formalities ; but, the writ being issued and levied, the affidavit has served its purpose, and, though a revisory court might see in some such departure from the strict direction of the statute sufficient error to reverse the judgment, we are unable to see how that can deprive the court of the jurisdiction acquired by the writ levied upon defendant's property."

This case has been often quoted and approved by the supreme court, and is said in *Matthews* v. *Densmore*, 109 U. S. 216, 219 (3 Sup. Ct. 126), to be conclusive in regard to the validity of such proceedings when collaterally assailed. To the same effect, see *Harvey* v. *Tyler*, 69 U. S. (2 Wall.) 328; *Ludlow* v. *Ramsey*, 78 U. S. (11 Wall.) 581; *Grignon's Lessee* v. *Astor*, 43 U. S. (2 How.) 319.

6. The result of these cases is that the objection that it does not affirmatively appear that a summons was issued in the action brought by the plaintiff against the Richardsons in Multnomah County at or before the issuance of the writ of attachment, is of no avail in this suit.

7. It is next claimed that no valid attachments in such actions were made, and for that reason the court did not acquire jurisdiction of the *res*, and, therefore, had no power or authority to proceed against the defendants on a service of summons by publication. The statute (Hill's Ann. Laws, § 149) provides that: "Real property shall be attached by leaving with the occupant thereof, or, if there be no occupant, in a conspicuous place thereon, a copy of the writ certified by the sheriff;" and the return of the sheriff on the writs of attachment in question is that he executed the same on a certain date, "in Monroe Precinct, Benton County, Oregon, by posting a copy of said writ of attachment, prepared and certified to by me, as sheriff of said county, in a conspicuous place on the following described property [being the property in controversy], there being no occupant thereof on the premises." The contention for the defendants is that this return is insufficient, because it does not show the particular place where the copy of the writ was posted, or that the property was attached as the property of the defendants in the action, or that the premises were not in fact occupied at the time the at-

tempted levy was made, or that it was made by leaving a copy of the writ in a conspicuous place on the premises. Where, as in case of the location of a public highway, provision is made by statute for acquiring jurisdiction of the person by notices posted in a public or conspicuous place, it is probably necessary that the proof of posting show the particular places where the notices were posted, so that the court can say whether it was a public place or not. But in case of an officer serving a writ of attachment there is a natural presumption in favor of the discharge of official duty, and when he is required to post a notice in a conspicuous place, and certifies that he has done so, his certificate is sufficient, when questioned collaterally, without pointing out the particular place where the notice was posted: Waples, Attachm. § 334; *Porter* v. *Pico*, 55 Cal. 165; *Davis* v. *Baker*, 72 Cal. 494 (14 Pac. 102) ; *Lewis* v. *Quinker*, 2 Metc. (Ky.) 284; *Anderson* v. *Sutton*, 2 Duv. (Ky.) 480 ; *Head* v. *Daniels*, 38 Kan. 1, 10 (15 Pac. 911); *Hall* v. *Stevenson*, 19 Or. 153 (20 Am. St. Rep. 803, 23 Pac. 887), is not in conflict with this proposition, because —First, it was not a collateral attack ; and, second, the return of the sheriff was held insufficient because it did not show that the person to whom the copy of the writ was delivered was an occupant of the premises sought to be attached, or that the place where it was posted was a conspicuous place on the premises. There is no holding or intimation in the opinion that when a sheriff levies upon real property by leaving a notice in a conspicuous place thereon his return must show the particular place where he left the copy of the writ, or that it would not be sufficient in such a return for him to certify that he left it in a conspicuous place.

8.   Again, it is claimed that the return under consideration is insufficient because it does not state that the

land attached was the property of the defendants in the writ. There is some apparent conflict in the authorities as to the effect of the omission of such a statement from an officer's return on a writ of attachment, and some of the earlier cases hold that it would be fatal to the attachment; but the decided weight of authority, as well as reason, seems to be that such a statement is not necessary to its validity, or to the jurisdiction of the court over the *res*, the presumption being that the officer obeyed the mandates of his writ, and, when he returned it with a certificate that in pursuance thereof he attached certain property, it is to be presumed that it belonged to the defendants in the writ, because he had no authority to attach the property of any one else :   Drake, Attachm. §§ 207, 208 ;   Waples, Attachm. § 314.

9.   The claim is also made that the return does not show that the premises were unoccupied at the time they were attached. The statute requires an attachment of real property to be made by leaving with the occupant, if there be one, a copy of the writ, and, if not, by leaving it in a conspicuous place thereon. The language of the return under consideration is that there was "no occupant thereof on the premises" when the writ was served, and counsel argues that this is, in effect, a statement that the premises were actually occupied, but the occupant was temporarily absent at the time of the officer's visit. In view of the presumptions which always come to the aid of an imperfect or indefinite return of an officer, the construction of the return given by counsel is, in our opinion, untenable.

10.   But, if it is sound, there is authority for holding that under the statute a valid attachment of real property may be made by leaving a copy of the writ in a conspicuous place thereon, if the officer, at the time of visiting

the land for the purpose of attaching it, cannot find any one visibly occupying the same :      *Davis* v. *Baker*, 72 Cal. 494 (14 Pac. 102).

11.      Another objection to the sufficiency of the attachment is that the sheriff certifies that he made it by "posting" a copy of the writ in a conspicuous place on the premises, while the statute provides that real property shall be attached by "leaving" a copy of the writ in such a place.      But, in our opinion, when an officer certifies that in the discharge of a duty requiring him to leave a copy of a writ or other paper he performed such duty by posting the writ or paper, it is but reasonable to conclude in a collateral proceeding that he left it so posted, and thus complied with the requirements of the statute :      *Lewis* v. *Quinker*, 2 Metc. (Ky.) 284, 287.      In support of the position of counsel, we are cited to *Lewis* v. *Botkin*, 4 W. Va. 533, and to *Matteson* v. *Smith*, 37 Wis. 333 ;      *Hall* v. *Graham*, 49 Wis. 553 (5 N. W. 943) , and *Wilkinson* v. *Bayley*, 71 Wis. 131 (36 N. W. 836) . These cases are not only direct attacks made in an appellate court upon the return of an officer, but they are based upon statutes entirely different from ours, and the decisions are expressly put upon the peculiar wordings of the statute.      Thus, for example, in *Lewis* v. *Botkin*, the statute requires the officer to "leave a copy posted at the front door of the place of abode of the defendant," and he returned that service was made by "posting an office copy hereof on the front door."      On a motion to quash, the return was held insufficient because it must be presumed that the legislature meant something more than mere posting by requiring the copy to be left posted, and that, in view of this provision of the statute, it could be true that the officer posted the copy, and yet not be true that he left it posted ;      but the court did not hold that, in the absence of such a statutory require-

ment, a court might not reasonably conclude from the certificate of an officer that he posted a notice at a certain place that he left it so posted.   The Wisconsin cases are based upon either a rule of court having the force and effect of a statute, or of a statute requiring proof of service to show that a copy of the summons was left with the defendant, as well as delivered to him ; and therefore it was held on appeal that a return which did not so state was insufficient.

12.   It is next claimed that the orders for publication of the summons in the actions brought against the Richardsons are void because (1) the affidavits upon which they are based did not tend to show that any diligence had been used to find the defendants in this state, or that they, or either of them, had property therein ; (2) no legal proof was made that the defendants could not be served in Multnomah County ; and (3) the orders for publication do not direct that a copy of the summons and complaint be deposited in the postoffice, as required by Section 57, Hill's Ann. Laws, "forthwith." The affidavits for publication, after reciting the facts constituting plaintiff's cause of action, allege the commencement of the actions, the filing of the necessary affidavits and bonds for writs of attachment, the issuance thereof, and that "the same was, on the twenty-second day of April, 1894, duly executed by levying upon, and the attachment of, certain real estate of the defendants in Benton County, Oregon ; that said attachment has not been dissolved or discharged ; that the defendants are, and each of them is, a nonresident of the State of Oregon, and are, and each of them is, a resident of the State of Washington ; and they are now, and each of them now is, without the State of Oregon, and cannot be found within said state, even after diligent search ; and affiant therefore avers that personal service of summons cannot be

made upon defendants, or either of them, within the State of Oregon." Under the ruling in *Pike* v. *Kennedy*, 15 Or. 420 (15 Pac. 637), these averments are sufficient to sustain the order for publication on a collateral attack. In the case referred to the affidavit stated that the defendants, to secure the payment of a promissory note, executed a mortgage on certain real property in the City of Portland, Multnomah County, Oregon, and this was held a sufficient allegation that they did have property within the state. In the case at bar the statement is that certain real property of the defendants in Benton County, Oregon, had been theretofore attached, and this is obviously a more positive showing that defendants have property in the state than the one held good in *Pike* v. *Kennedy*.

13. So, also, in the latter case, it was averred that personal service could not be made upon the defendants in this state, for the reason that they had departed therefrom, "and now reside at Walla Walla, in the Territory of Washington," which was not absolutely inconsistent with their actually being within the state at the time; while in the affidavits under consideration the statement is that the defendants not only reside in the State of Washington, but there is a positive statement that at the time of making the affidavits they were not within the State of Oregon, and in this regard the showing is also more positive than the affidavit in *Pike* v. *Kennedy*.

14. Again, it is claimed that a valid order for service by publication can be made only after a summons has been placed in the hands of the sheriff, and returned, "Not found." But we find no such provision in the statute. It provides (section 56) that when service of the summons cannot be made as prescribed in the last preceding section, "and the defendant, after due diligence, cannot be found within the state, and when that

fact appears by affidavit to the satisfaction of the court
or judge thereof,   *   *   *   and it also appears that a
cause of action exists against the defendant, or that he
is a proper party to an action relating to real property in
this state,—the court or judge   *   *   *   shall grant an
order that the service be made by publication of a sum-
mons" in certain designated cases.   This section pro-
vides when service may be made by publication, and
how the necessary jurisdictional facts for an order to that
effect shall be made to appear.   It does not provide that
before making the order it shall appear from the return
of the sheriff that the defendant cannot be found, but
that it shall so appear by affidavit to the satisfaction of
the court or judge thereof ; and, when the requisite facts
thus appear, the court has jurisdiction to make the
order :   *Goodale* v. *Coffee*, 24 Or. 346, 354 (33 Pac. 990).
The method of service by publication is statutory, and it
is sufficient when the requirements of the statute, what-
ever they are, have been complied with.   It is claimed
by counsel, however, that the only legal evidence of the
fact that service of the summons cannot be made as pro-
vided "in the last preceding section" is a return of the
sheriff to that effect.   In support of this contention he
cites Section 59, Hill's Ann. Laws, which provides
"Whenever it shall appear by the return of the sheriff,
his deputy, or the person appointed to serve the sum-
mons, that the defendant is not found, the plaintiff may
deliver another summons to be served, and so on until
service be had ; or the plaintiff may proceed by publi-
cation as in this title provided, at his election."   But,
as we view it, this section has no bearing whatever on
the question under consideration.   It simply gives to the
plaintiff the right to issue an *alias* summons, or proceed
by publication, as he may elect, whenever it appears by
the return of the sheriff or deputy that the defendant is

not found; but it does not undertake to provide what the method of procedure shall be in case the plaintiff elects to proceed by publication. That is elsewhere provided in the statute.

15. The next objection is that, although the order for publication of the summons directs that a copy of the complaint and summons be deposited in the post-office, addressed to the defendants at their place of residence, it does not order such deposit to be made "forthwith," as the statute (section 57) requires. The omission of the word "forthwith" from such an order, although required by the statute, is not regarded, on collateral attack, as fatal to the proceedings, when it appears that the copies were in fact mailed within a reasonable time after the date of the order: *Lyon* v. *Comstock*, 9 Iowa, 306; *Anderson* v. *Goff*, 72 Cal. 65 (1 Am. St. Rep. 34, 13 Pac. 73).

16. It is claimed, however, that the deposit in this case was not so made. The order for publication is dated July 13, and the publication was had in the first issue thereafter of the newspaper in which it was directed to be made,—on the twentieth,—and copies of the complaint and summons mailed to the defendants on the same day; and, in our opinion, this was a substantial compliance with the requirements of the statute, and was not such a delay as to oust the court of the jurisdiction otherwise rightfully obtained. The object to be accomplished by such a deposit in the postoffice, where the residence of the defendant is known, is to give him such notice, in connection with the publication itself, as will inform him that the suit is pending, so that he may have an opportunity to appear and defend, if he so desires; and this purpose is served, it seems to us, when the deposit is made in the postoffice as early as the first

publication, if such publication itself is made within a reasonable time after the date of the order.

17.   It is also claimed that the proof of publication and of the mailing is insufficient to sustain the judgment because (1) such proof is not attached to or indorsed on the original summons ; (2) the deposit in the postoffice was not made by the sheriff or his deputy, or by a person specially appointed by him or the court, but by an unofficial person ; and the affidavit in proof of such deposit does not show that a copy of the summons required to be published was deposited, or that such copy was certified to.   But these objections are each without merit. There is no principle of law rendering a judgment invalid on collateral attack simply because the proof of service of the summons is not annexed to or indorsed on the summons itself.

18.   Nor are we advised of any provision of the statute which requires the proof of a deposit of the complaint and summons in the postoffice, in pursuance of an order for service by publication, to be made by the sheriff or his deputy, or a person specially appointed for that purpose, or that the copy of the summons so deposited should be certified to by any one.   Section 54 of the statute designates the person by whom service of the summons shall be made when the defendant is found in the state, but it has no reference, as we interpret it, to the method of service by publication.   In the latter case the law requires a copy of the complaint and summons to be deposited in the postoffice, directed to the defendant, if his residence is known to the party making the application, or can with reasonable diligence be ascertained (section 57) ; but there is no provision that such deposit shall be made by any particular officer or person, and, in our opinion, it is sufficient if made by any adult

person competent to make the required proof thereof, except, probably, the party himself.

19. It is also insisted that the judgment is void because the original summons does not appear in the judgment roll. But there is likewise no merit in this objection. The proof of publication, as well as the findings and recitals in the judgment of the court, shows that such a summons was, in fact, issued, and its omission from the judgment roll is, therefore, of no consequence at this time.

20. And, finally, it is contended that the judgments upon which this suit was brought are void because the attached property had been transferred by the Richardsons to their co-defendants before the commencement of the several actions at law, and hence it is claimed that they had no interest therein which could be seized on attachment, and so the court did not obtain jurisdiction to render any judgment whatever. A sufficient answer to this position is that the complaint in this suit avers that such transfer was made for the purpose of defrauding creditors, and as to the plaintiff it is, therefore, only an apparent, and not a real transfer. As to it, the land still belonged to the fraudulent grantor, and was as much subject to attachment as though the fraudulent deed had never been made : Waples, Attachm. § 249 ; *Mulock* v. *Wilson*, 19 Colo. 296 (35 Pac. 532); *Keene* v. *Sallenbach*, 15 Neb. 200 (18 N. W. 75); *Williams* v. *Michenor*, 11 N. J. Eq. 520 ; *Greenway* v. *Thomas*, 14 Ill. 271 ; *Dewey* v. *Eckert*, 62 Ill. 218.

Having thus disposed of the numerous objections to the validity of the judgments upon which this suit is based, the only remaining question is one of fact to be determined from the testimony. The court below found that the conveyance from the Richardsons to their minor children was fraudulent and void as to the plaintiff, and

this conclusion is, in our opinion, fully supported by the testimony. It is unnecessary to state the facts disclosed by the evidence in detail. It is sufficient that at and prior to the time of the conveyance in question the defendants Richardson were indebted to the plaintiff in the aggregate sum of more than $8,000, and to other parties in large sums, and were wholly insolvent; that before the date of the conveyance they were called upon by plaintiff to either pay or secure the indebtedness due it, and several conferences had been had between them and the officers of the bank in regard to the matter, during which the question of securing the indebtedness by a mortgage on the Oregon land was considered. While these negotiations were in progress, and while the bank was relying upon their honesty and good faith, they secretly conveyed their personal property in Washington to one of their hired men, a part of the stated consideration being wages alleged to be due him, took his note for the balance, and transferred it to one of their creditors; and also conveyed the Oregon land to their three minor children, the eldest of whom was at the time eighteen years of age, and the youngest ten, for the evident purpose, as we read the testimony, of preventing its seizure by their creditors.

It is true, the answer alleges, and the defendants A. C. and Laura R. Richardson undertook to claim, that the conveyance was made to their children in payment and satisfaction of a debt due them. The evidence which they offer in support of this defense is that in 1881 they received from the grandmother of the children three hogs of uncertain pedigree, but of the alleged value of $500, in trust under an agreement to care for them, and to account to the children for their increase, and the product thereof, whenever the grandmother should call upon them to do so; that at or about the time of the

conveyance in question they were called upon to render an account of their trust, and upon such accounting it was found they were indebted to their children in the sum of $10,415.66, and upon demand of the grandmother the conveyance was made in payment thereof. When it is remembered that this conveyance was made at a time when the defendants were insolvent, were being pressed by their creditors, and that the evidence discloses that the property received, from the children's grandmother, if any, was used, managed, controlled, handled, and disposed of by the Richardsons at their pleasure; that no account whatever was kept in reference thereto, and no witness in the case has been able to give even approximately the several items going to make up the aggregate sum of $10,000; and the further fact that one of the grantees in the conveyance was not born until after the creation of such alleged trust,—it will be apparent that this defense, and the evidence in support of it, do not appeal very strongly to a court of equity.

21. The conveyance, and the circumstances under which it was made, bear the semblance of an attempt to cover up the property, and it was, therefore, the defendant's duty to show that it was made in good faith, and for a valuable consideration. Under such circumstances the defendants ought to be able to point out definitely the various items going to make up the alleged indebtedness. As said by Mr. Justice THAYER in *Marks* v. *Crow*, 14 Or. 382 (13 Pac. 55): "Any other rule, where property has been shifted from one member of a family to another, and creditors left unprovided for, would lead to the most flagrant frauds. The creditors could not show that the indebtedness claimed to be the consideration of the transfer did not exist. They could do no more than to inquire when and under what circumstances it was created; and, unless the recipient of the property

could give a clear and precise account of the items constituting it, they should have the right to ask the court to infer that it was a sham and pretense; otherwise property might be put beyond the reach of creditors with impunity." Fraudulent intent is a question of fact, but it is agreed that it may be inferred from the facts and circumstances surrounding the transaction. It sometimes — and often, indeed — happens that the surrounding circumstances quite as satisfactorily explain the true inwardness of the transaction, and import knowledge of its object or of the intended fraud, as any other character of testimony. It follows that the decree of the court below must be affirmed, and it is so ordered.

AFFIRMED.

Decided 27 March; rehearing denied 21 April, 1899.