[Filed January 14, 1887.]

# S. MARKS & CO. *v.* H. G. & E. G. CROW.

SUIT IN EQUITY—TESTIMONY IN—REPEAL.—The effect of the act of 1885 (Laws 1885, p. 69), amending Sec. 393 of the civil code, as amended in 1874 (Laws 1874, p. 84), is to repeal the provisions of the latter act, authorizing the parties to a suit, as soon as the pleadings were completed and the suit at issue on a question of fact, to proceed to take the deposition of witnesses to be offered on the trial, and also of the provisions authorizing the appointment of a short-hand reporter.

SAME—TESTIMONY DE BENE ESSE—DEPOSITION—REFERENCE.—Said amendment and the amendment of Sec. 805 (Laws 1885, p. 70), *it seems,* leave no provision for taking the deposition of a witness in an equity case, even *de bene esse,* unless a reference is made to find the facts, or facts and law.

SAME—AMENDMENT OF STATUTE.—Where, pending an action or suit, the law regulating the proceedings thereon is amended, the proceedings had in accordance with the law in force at the time will be held valid, and those taken after the amendment goes into effect should be in conformity therewith. The rule applied to depositions taken in a suit under a provision which was repealed before the cause was finally heard.

FRAUDULENT CONVEYANCE—EVIDENCE—CONSIDERATION—BURDEN OF PROOF.—Where one who is in debt at the time conveys substantially the whole of his estate to his brother, ostensibly in satisfaction of his debt to the latter, in a suit by creditors to set aside said deed for fraud, it is incumbent upon the grantee to establish by satisfactory proof that there was a valuable and adequate consideration for the deed. And unless he can give a clear and precise account of the items constituting the alleged debt, a fraudulent intent will be inferred.

SAME—EXISTING AND SUBSEQUENT CREDITORS.—In such case it is immaterial whether the debt due such creditors had been contracted at the time of such conveyance or not, if the parties at the time executed it for the purpose of defrauding them.

DOUGLAS COUNTY. Defendants appeal. Affirmed.

*Jno. Burnett, Jno. Kelsay,* and *J. J. Walton,* for Appellants.

*Willis & Jones,* for Respondents.

THAYER, J.—The respondents commenced a suit in the court below to subject certain real property situate in said county to the payment of a certain judgment recovered by the respondents in an action at law in said court against the appellant, H. G. Crow, on the 19th day of January, 1884, for the sum of $323.94 and costs of action. The judgment was recovered upon an indebtedness due from said appellant to the respondents, alleged to have been contracted between January 1, 1877 and 1881.

It appears that during said time the said appellant was the owner of the said real property, and that he continued to own the same until the 26th day of February, 1883, when he executed a deed to the same to the appellant, E. J. Crow, who is his brother. The real object of the suit is to declare this deed fraudulent and void as against the respondents' judgment, and the main question in the case is whether the deed was executed in good faith and for a valuable consideration.

It appears from the transcript, that on the 22d day of October, 1879, the said H. G. Crow executed to E. J. Crow a promissory note for $6,500, payable six months after date, with interest at the rate of one per cent. per month, and to secure its payment executed a mortgage upon the land in suit; that about the 25th day of October, 1880, the respondents held a note against said H. G. Crow, secured by mortgage upon real property, upon which there was at that time due $632.57; and at that date said E. J. Crow called upon respondents and paid it off, and took a transfer of the claim to him-

self; and that within a day or two from that time said H. G. Crow confessed judgment upon the note in said circuit court, and at or about the same time also confessed judgment to the said E. J. Crow upon the note and mortgage of October 22, 1879, to the amount of $7,706.80, which two judgments were duly entered in said court. Four thousand dollars of this alleged indebtedness is claimed by the appellants to be the consideration of said deed. The remainder of it is admitted by the appellants to have been liquidated by the said H. G. Crow. The circuit court, after hearing the proofs and evidence, found the following facts:

(1) "That the promissory note dated October 22, 1879, for $6,500.00, described in the complaint, and the mortgage given to secure the same by defendant H. G. Crow, to his brother E. J. Crow, was without consideration, and was made and accepted by said defendants to hinder, delay and defraud the creditors of said defendant H. G. Crow.

(2) "That on October 28, 1880, defendant H. G. Crow confessed judgment in favor of E. J. Crow for $7,706.80 upon said note and mortgage; that said judgment was without consideration, and false and fraudulent, and made and taken for the purpose of hindering and delaying the creditors of H. G. Crow.

(3) "It is not true that on or about October 25, 1880, the defendant H. G. Crow, with intent to hinder, delay or defraud his creditors, furnished the money therefor, or caused the defendant E. J. Crow to purchase from S. Marks & Co., the plaintiffs, the note and mortgage of H. G. Crow to said Marks & Co., of date January 12, 1878, for $421.07, as mentioned in the complaint; but the same was purchased by said E. J. Crow with his own money.

(4) "It is not true that the judgment confessed by said defendant H. G. Crow in favor of defendant E. J. Crow, on the 27th day of October, 1880, for the sum of $632.57, upon the note and mortgage mentioned in my third finding of facts, was made or taken with the intent to hinder, delay or defraud the creditors of defendant H. G. Crow.

(5) " That the deed of conveyance of the real property described in the complaint executed by H. G. Crow to E. J. Crow, on the 26th day of February, 1883, was executed and received by the parties thereto for the purpose of hindering and delaying the creditors of said H. G. Crow.

(6) " The said H. G. Crow has remained in the exclusive possession of the real property described in the complaint, since the date of the deed of February 26, 1883, from himself to E. J. Crow, and has received the exclusive benefits and proceeds' of said land ; and there was or is no agreement between himself and said E. J. Crow, by which he should account to said E. J. Crow for any part of the rents and profits of said lands ; but he has, ever since the date of said deed, and is now receiving the sole and exclusive benefits of the land and the income therefrom."

And thereupon found as conclusions of law, that the deed of February, 1883, should be set aside, the land sold, and the proceeds applied (1) to the payment of the judgment in favor of said E. J. Crow against H. G. Crow for $637.57, recovered October 27, 1880. (2) To the payment of the respondents' judgment.

The respondents' counsel contends that the findings of the court are conclusive as to the facts, the same not having been excepted to, as provided in the amendment of section 393, civil code, adopted at the session of the legislative assembly in 1885. (Session Laws of 1885, p. 69.) This amendment was passed after the suit was commenced, and took effect before the hearing was had, and before the testimony was all taken; but the part of the testimony taken after the amendment went into effect related simply to the rebuttal of certain impeaching evidence, and was given orally before the court. Aside from this, all the testimony was taken by deposition, in accordance with section 393 of the civil code, as amended in 1874. (Session Laws of 1874, pp. 94, 95.)

The question then arises as to the effect of the amendment of 1885, above referred to. It provides " that all issues of fact in suits in equity may be tried by the court ; the evidence shall

XIV. OREG.—25.

be presented, and the trial conducted in the same manner as actions at law ; *Provided*, that the court may, at its discretion, refer the case to a referee, pursuant to the provisions of section 805 of this code ; that in all suits the court, in rendering its decisions therein, shall set out in writing its findings of fact upon all the material issues of fact presented by the pleadings, together with its conclusions of law thereon ; but such findings of fact and conclusions of law shall be separate from the decree, and shall be filed with the clerk, and shall be incorporated in and constitute a part of the judgment roll of said case ; and such findings of fact shall have the same force and effect, and be equally conclusive, as the verdict of a jury in an action at law.   Exceptions may be taken during the trial to the ruling of the court, and also to the finding of fact, and a statement of such exceptions, prepared and settled as in actions of law; and the same shall be filed with the clerk within ten days from the entering of the decree, or such further time as the court may allow."

This amendment was evidently intended to permit the court to proceed and try a suit in equity in the same manner as a case at law is tried where a jury trial is waived.   The provision in regard to taking exceptions is not explicit.   Exceptions to findings of fact cannot be taken during the trial, as the language of the provision would seem to require.   Exceptions of that character cannot, in the nature of things, be taken until after the decision is rendered.   The New York code at one time provided, and probably does yet, that a notice containing the exceptions to the findings should be filed within ten days after the entry of the decision; but that mode does not seem to be contemplated by this amendment, though I supposed the first time I inspected it that it did.   The only construction to be given the amendment, as I can see, is to allow the party desiring a review of the decision to prepare a statement of the exceptions taken at the trial, with sufficient evidence to explain them ; and if he wants the facts reviewed, to specify his objections to the findings in the statement, and include in it all the evidence upon which they were found.   The amendment also

has a broader effect than may generally be supposed. Section 393 of the code, as amended in 1874, provided that as soon as the pleadings were completed, if the suit be at issue on a question of fact, the parties might proceed and take the depositions of witnesses to be offered on the trial. Said section, as amended in 1885, operates as a repeal of that provision, and also of all matters contained therein authorizing the appointment of a short-hand reporter. This amendment, and the amendment of section 805, leaves no provision, as I can see, for taking the deposition of the witness in an equity case, even *de bene esse*, unless a reference is ordered to find the facts, or facts and law.

I am not inclined to think, however, that this amendment affected depositions that had been taken prior to its going into effect. I think the rule should be, where the code is amended pending an action or suit, that the proceedings had in accordance with the provisions thereof in force at the time should be held valid; and that those taken after the amendment goes into effect should be in conformity therewith. If this view is correct, the depositions should be considered in determining whether the findings are supported by the proofs.

The appellants' counsel contend that there is no evidence in the case showing that the deed of February 26, 1883, was executed by the said H. G. Crow to the said E. J. Crow, to hinder, delay, or defraud the creditors of the said H. G. Crow. This is undoubtedly true, if the said H. G. Crow was, on the 22d day of October, 1879, justly indebted to the said E. J. Crow in the sum of $6,500, and the promissory note executed for that sum by the former to the latter of that date was an honest transaction. The validity of said deed, and of the judgment confessed by the said H. G. Crow to the said E. J. Crow on the 28th day of October, 1880, for the sum of $7,706.80, hinge upon the truth of that matter. It must be conceded that the evidence does not directly show but that E. J. Crow did loan to the said H. G. Crow the amount of money claimed to have been so loaned, and unless it can be inferred that their account of the affair is a subterfuge, it must be credited.

It appears that H. G. Crow is the senior by a number of

years of his brother, E. J. Crow ; that he bought the real property in question, and resided upon it almost continuously until the time their depositions were taken, and is probably residing upon it at the present time.    E. J. Crow lived at home with his parents until the death of his father, which occurred about 1875, and after that time he continued to reside with his mother for about six years.    The father owned a farm in Cole's Valley, upon which the family lived, and which he devised to the mother.    It is claimed that E. J. Crow began loaning the money to the brother about ten years before the father's death, when he was only about seventeen or eighteen years of age, and that the amount of the loans, with interest, aggregated said sum of $6,500 on the 22d day of October, 1879, when the said promissory note of that date was executed, and which was the consideration of the note.    A considerable of the respondents' evidence was given in order to show that said E. J. Crow could not have earned, from the resources and within the time claimed, the amount of money he is alleged to have earned.    This evidence creates a strong doubt as to the truthfulness of his statements upon that point.    It is not, however, conclusive that they are untrue, but it renders them, at least, problematical.    For a boy between seventeen and eighteen years of age, working upon his father's farm, raising stock and doing a general farming business in a section of country remote from market, to realize net earnings of the amount claimed, in view of the circumstances surrounding him, and within the time alleged, appears like exaggeration, though of course it was not impossible, and I do not think the evidence and circumstances disprove the statements.    If, therefore, the question of his having earned and advanced to his brother the money they both testified he did, depended upon the contradiction of their testimony upon that point, the respondents would fail to make out their case, although the evidence they produced weakened it very much.    Besides, the testimony itself, as to the earnings, was unsatisfactory.    The said E. J. Crow's statements were vague and conjectural.

But the most serious difficulty in the way of the defense is

as to the appellants' testimony establishing that E. J. Crow
advanced to H. G. Crow the $4,000 claimed to be the consid-
eration for the deed, or any money, aside from the $632.57
paid to respondents upon the note and mortgage assigned to
him, which had not been repaid at the time said deed to the
land in suit was executed to him. That is the important ques-
tion in the case. If H. G. Crow was not indebted to E. J.
Crow on the 26th day of February, 1883, the time the deed
was executed by the former to the latter, then, evidently, the
deed was executed for the purpose of hindering and delaying
creditors, as found by the circuit court. As to whether any
such indebtedness existed or not I have grave doubts, in view
of the testimony, and facts and circumstances of the case. The
fact or pretense that it did exist, depends of course on the gen-
uineness of the promissory note of October 22, 1879, for the
sum of $6,500. The fact that H. G. Crow was indebted to
other parties at the time of these various transactions, and that
E. J. Crow is his brother, renders it incumbent upon the lat-
ter to establish by satisfactory proof that there was a valuable
and adequate consideration for the deed. The law will not, it
is true, presume fraud, but will infer it from facts and circum-
stances; and I think the inference very strong, where a party
has taken notes of a large amount from his brother, and a con-
veyance of all his tangible property, leaving him hopelessly in
debt to other parties, and being called upon in a proper pro-
ceeding to give an account of the affair, is unable to make a
clear and satisfactory statement concerning the indebtedness
out of which the transaction arose.

The following seems to be the substance of the testimony
given by the two brothers upon the point:

Interrogatory 3, to E. J. Crow : State fully the transaction of
the sale of land in Douglas County, Oregon, described in the
complaint in this suit, by Henry G. Crow to you? Ans. Well,
I loaned Henry money; I took a lien on his land claim ; after-
wards took the land for payment.

Int. 4. What was the consideration paid by you to Henry G.
Crow for said land? Ans. $4,000.

Int. 5. In what way was that amount paid by you to Henry G. Crow? Explain fully. Ans. Well, I first loaned Henry money seventeen or eighteen years ago, interest at one per cent. Loaned him money at different times, which amounted to several thousand dollars; he wanted more money from me, this was about 1880 ; I told him that he was running behind in his business; that I was not secured in the land sufficient to advance him any money then ; my mother persuaded me to assume a debt that he owed her, and advance him more money, and take a judgment upon the land for security.

Int. 6. State what amounts of money you had loaned to H. G. Crow at different times, if you remember, up to 1880 ? Ans. About $7,100—a little over that amount.

Int. 7. What amount of money was actually due you from H. G. Crow at the time the sale of the land was made to you ? Ans. $4,000.

Int. 8. In addition to this sum of $4,000, what amount did you become reponsible for H. G. Crow, and to whom ? Ans. I assumed a debt from him to mother, about $1,600.

The witness, after being interrogated in regard to his payment to the respondents of the $632.57, and of the assignment of the note and mortgage to him, was asked the following:

Int. 17. What did you do with the note and mortgage signed to you by S. Marks & Co. against H. G. Crow ? Ans. I added it to the rest he owed me, and put it into a judgment—that $7,000 judgment.

Int. 18. Is it not a fact that you foreclosed the mortgage assigned to you by Marks & Co.? Ans. Yes, sir.

Int. 19. Explain fully the judgment of $7,706, taken by you against H. G. Crow. Ans. In the first place, J. Knowles bought that land and failed to pay for it, and it was about to fall back to Tull—to the man he bought it of. Father and Henry and Abe Crow advanced property and stock and paid for it. Then H. G. paid off Abe Crow, and he took the land, and fell paymaster to father for what he had advanced on the land. Then mother furnished money, about $700, to enter land joining this Tull place ; H. G. stood good for the whole debt—for

father's and her's against the land. He paid at times on this debt, and reduced it to about $1,600 or $1,800. During this time I made loans to H. G. Crow at different times; that the interest and principal amounted to $3,000 or $4,000; so that when I paid this Marks mortgage and assumed mother's debt of about $1,600, it made him owe me about $7,706. Then H. G. made me payments with stock, sheep, cattle, some grain, wheat, and some wool, reducing this $7,706 down to $4,000. I wanted my money, and he could not raise it, and would make no effort to pay me in any way; and I came down here and employed Judge Walton to close the things out; and I went home and wrote him a letter, that if he did not come and settle with me, that I had Walton employed to close that judgment on that land. He came down to my place here in Lane County. Said he was willing to fix it some way (that debt that I held against his land at that time). He thought I ought to give him more than $4,000 for the land. I told him I didn't want the land, that I wanted my money; that if he could raise more than $4,000, to do it, and pay me off; that I was willing for him to do it; he said times were so he couldn't raise any money on the land; the next morning after we was talking this trading business, he came to me and said he had studied this thing over, that he didn't think he could do anything better than just let me have the land claim. We came down here to Judge Walton's office, in Eugene, and he made me a deed to all the lands. Then I came back the next day, and got Walton to count up a portion of notes and accounts that I held against him; that settled our business.

Int. 20. State whether or not the Marks mortgage of $622 was included in the larger judgment of $7,706, taken by you against H. G. Crow. Ans. Yes, sir, it was.

H. G. Crow, upon his cross-examination, was asked the following questions, and gave the following answers thereto:

Int. 29. How much money did you borrow of E. J. Crow during the year 1875? Ans. I can't state. I borrowed from him so many times and in small quantities that I am not able to place the dates, as it was very often received without giving a note, and he kept only a memorandum of it in the book.

Int. 30. Were you owing him any for borrowed money at the time of your father's death? Ans. I think I was. I had borrowed money from him four or five years previous to that, but I couldn't state the amount.

Int. 31. You continued to borrow money from him down to 1880, or about that time, did you not? Ans. The last money that I borrowéd from him he gave to me after lifting a mortgage of Marks & Co.

Int. 32. Did you borrow any from him in 1876? Ans. I cannot state positive whether I did or not.

Int. 33. Did you borrow any in 1877? Ans. I could not state.

Int. 34. Did you borrow any in 1878? Ans. I think E. J. Crow lifted that mortgage; I don't remember.

Int. 35. Did you borrow any money of him in 1879? Ans. I may have; can't say whether I did or not.

Mrs. Ollie J. Crow, wife of E. J. Crow, also gave a deposition upon the part of the appellants in regard to this money lending, and made the following answers to the following interrogations:

Int. 3. (Direct examination.) About when was you married? Ans. About nine years ago.

The deposition was taken in 1885, so that they must have been married in 1876.

Int. 6. Who did the principal part of your husband's writing since you were married? Ans. I did.

Int. 7. State, if you know, of your husband's loaning any money to any persons, and if so, to whom? Ans. He loaned money to various parties. He loaned money to H. G. Grow, for one.

Int. 8. State if you remember of writing any notes for your husband, and who signed the notes, if you know? Ans. H. G. Crow signed notes in my presence; I could tell others, but I don't think it necessary.

Int. 9. About how many notes did you write for H. G. Crow to sign at different times, if you can remember? Ans. I wrote as many as eight, and don't know but what more. I can't say positive.

Int. 10. Can you tell the amount of any of the notes, or all of them? If so, state the amount. Ans. I can't tell the amount of any of them but one; that was $300; and he borrowed it of Lem Barnard; my husband borrowed the amount and let Henry have it.

Int. 5. (Cross-examination.) Did H. G. Crow borrow money from your husband every year? Ans. I don't know; wouldn't be positive.

Int. 6. Did he borrow money at any time more than once during the same year? Ans. I think I have known him borrowing as often as three times during the same year.

Int. 7. What year was that? Ans. I don't remember.

Int. 8. How much was the amount of the smallest note you wrote for your husband against H. G. Crow for borrowed money? Ans. I don't remember the amount of but one note.

Int. 9. Were there any notes for a larger sum than the $300, the one you remember? Ans. Yes, I think there was.

Int. 10. How many of them? Ans. I couldn't say.

Int. 11. Is there more than one? Ans. I do not remember the amount of the notes, only one.

Int. 12. Was there any interest mentioned in those notes, or any of them? Ans. The notes I wrote, I think, were twelve per cent. per annum. I am positive they were all twelve per cent.

Int. 12. How much time was given on these notes; that is, when were they made payable? Ans. I couldn't say.

Int. 14. How many of these notes did you have in your possession against H. G. Crow for borrowed money at any one time? Ans. I think there were more than eight.

Int. 15. Did you know of his ever making any payments at all of interest or principal? Ans. I do not.

Int. 16. Did your husband generally have money on hand to accommodate Henry with loans when he wanted to borrow? Ans. Sometimes he had to go and borrow it for him.

Int. 17. It is a fact, is it not, that H. G. Crow borrowed about all the money that your husband accumulated? Ans. I could not say; he got a large portion.

Int. 18. If your husband borrowed money and loaned it to H. G. Crow, and H. G. Crow did not pay your husband any, then he got more monêy from your husband than he accumulated in his business, did he not? Ans. No, of course he didn't.

Int. 19. Then H. G. Crow did not borrow all of the money your husband accumulated in his business, did he? Ans. I can't say positively.

There was no memorandum or scrap of writing to show that any money was loaned; nor any proof given as to when or in what amounts it was loaned, other than general statements that said E. J. Crow did, at different times, loan money to his brother, H. G. Crow. Mrs. E. J. Crow thinks there were as many as eight notes executed. This must have occurred between 1876 and 1879, as on the 22d day of October of the latter year, H. G. Crow executed to his brother the $6,500 note bearing one per cent. per month interest, upon which the judgment of $7,706.80 was confessed, which included the $6,500 principal, $780 interest, and $426.80 attorney fees. What the $6,500 was made up of is left to general statement and conjecture. The eight notes Mrs. E. J. Crow testifies in regard to would not, in all probability, amount to that sum. Three hundred dollars was one of the largest sums specified in any of said notes. She thought there was another note still larger, but the evidence given by her would not warrant the conclusion that this $300 was more than an average size. Upon that data the ciɟht would aggregate only $2,400. It seems that the highest rate of interest allowed by law was exacted in every case, and that there was a design to swell the amount of Henry's indebtedness to E. J. Crow as much as possible. The judgment was confessed without any other apparent object, and I can see no other purpose than that in foreclosing the note and mortgage taken from Marks & Co. The affair looks to me suspicious; looks as though there was a method in it, aside from the securing the payment of money loaned. E. J. Crow professes to be helping his brother in the matter, but to my mind it was such help as vultures give to lambs in covering and devouring them.

It was claimed upon the argument that the respondents'

claim, which they are endeavoring to enforce herein, was not created at the time the $6,500 note was executed by H. G. to E. J. Crow. I suppose that claim is based upon the allegation of the complaint, which is as follows: "That at and during the time said defendant H. G. Crow contracted the indebtedness to the plaintiffs, which was between January 1, 1877, and the   day of      1881, upon which the judgment was recovered," etc. How much of it was contracted after the 22d day of October, 1879, the date of said note, does not appear. Asher Marks, one of the respondents, in his deposition given in the suit, testified in substance that, at the time the note and mortgage executed to the respondents were transferred to E. J. Crow, October 25, 1880, the account amounted to several hundred dollars (answer to cross Int. 2), and he testified in his direct examination, in answer to direct Int. 3, that at the time said E. J. Crow paid the mortgage he asked him why he did not settle the book account in place of the mortgage. The answer was, that he wanted to pay the mortgage off first and settle the balance of the account shortly. This testimony as to the amount due upon the book account is not contradicted by the appellants in their deposition, though they deny that E. J. Crow agreed to pay it.

But I do not see that it matters whether the account, had been contracted when the $6,500 note was executed or not, if at the time of the execution of the note the parties had in view the creation of the debt, and intended to defraud the respond-dents thereof ; and such intention will be presumed in this case, if H. G. Crow was not indebted to E. J. Crow in the sum of $6,500 at the time referred to. The whole case, in my judgment, turns upon that point. And it does not, as I view it, devolve upon the respondents to prove that H. G. Crow was not indebted to E. J. Crow in the sum claimed, in order to establish their cause of suit. The appellants, under the circumstances, could not, by a general assertion that the debt as claimed was due, make out a defense. The transaction bore the semblance of an attempt to cover up the property, and it was the appellants' duty to show that the indebtedness existed.

E. J. Crow should, under the circumstances, have been able to point out definitely the various items constituting the indebtedness. Any other rule, where property has been shifted from one member of a family to another, and creditors left unprovided for, would lead to the most flagrant frauds. The creditors could not show that the indebtedness claimed to be the consideration of the transfer did not exist. They could do no more than to inquire when and under what circumstances it was created; and unless the recipient of the property could give a clear and precise account of the items constituting it, they should have the right to ask the court to infer that it was a sham and pretense—otherwise, property might be put beyond the reach of creditors with impunity. (*Crosby* v. *Buchanan*, 23 Watt, 420.) The case at bar furnishes an illustration. H. G. Crow had opened an account with Marks & Co. He had contracted an indebtedness to them that was unsecured. He had borrowed money from time to time of his brother; was owing his mother $1,600. The brother takes his note for a large sum, and has it secured by a mortgage upon his land; pays off and receives a transfer of his secured indebtedness; assumes the debt to his mother; obtains from him subsequently, professedly as part payment of these matters, sheep, cattle, wheat and wool, which he admits amounted to $3,706, "reducing," he says, "this $7,706 down to $4,000"—must have required the sum of $3,706; then takes all his landed estate; in the meantime has had H. G. Crow confess judgments on the note and mortgage taken to himself, and also upon the Marks & Co.'s note and mortgage, which he concedes to have been included in the former judgment; charged the highest rate of interest, and exacted large attorney's fees; and neglects to give any data from which it can be ascertained whether the amount of his indebtedness claimed has been honestly created or not. His answer to the complaint in the suit is made up of naked denials. If this is sufficient to answer the requirement of law in an equity proceeding, then the respondents are powerless. The whole indebtedness from H. G. to E. J. Crow at the time the $3,500 note and mortgage was executed, may

not in fact have exceeded the $3,706 subsequently paid by the former to the latter, and there would be no way to detect the discrepancy if the course pursued in the trial of the suit is sanctioned as proper. In view of the facts and circumstances of the case, I think the findings of the circuit court were correct, and that the decree entered thereon should be affirmed.