Argued at Pendleton May 2; reversed June 21, 1938

## CONNEL *v.* O'CONNOR ET AL.

(80 P. (2d) 542)

In Banc.

*John F. Kilkenny*, of Pendleton (Childers & Finsley, of The Dalles, and Raley, Kilkenny & Raley, of Pendleton, on the brief), for appellant.

*John Gavin*, of The Dalles (Gavin & Gavin, of The Dalles, on the brief), for respondents.

BAILEY, J. This suit is brought by Bridget Connel, plaintiff, as a creditor, to set aside a conveyance of certain real property in Wasco county from the defendant Mary Glavey O'Connor to the defendant Marguerite Glavey, her daughter. After a hearing on the merits a decree was entered by the circuit court, dismissing the suit.

In July, 1932, the defendant Mary Glavey O'Connor executed and delivered to the plaintiff three promissory notes totaling $1,727, and at the same time executed a chattel mortgage on certain personal property consisting of horses and farm equipment, to secure the payment of the notes. All the notes were payable, respectively, one year or less from date.

On failing to receive payment Bridget Connel, payee of the notes, instituted a suit against Mary Glavey O'Connor in November, 1933, to collect the amount of the notes and to foreclose the chattel mortgage. Shortly thereafter Mrs. O'Connor paid to the

plaintiff in that suit $1,000, of which $500 was paid in satisfaction of a judgment theretofore obtained by that plaintiff against Mrs. O'Connor, and the balance of the $1,000 was paid towards costs of the suit and applied on the indebtedness owing to the plaintiff on said notes as principal and interest. In consideration of this $1,000 the parties to the litigation entered into a stipulation whereby Mrs. O'Connor was granted an extension of time until December 12, 1934, in which to pay the balance due on the notes and interest, and that suit was dismissed.

No further payments were made on the three notes, and on January 4, 1935, attorneys for the plaintiff wrote to the defendant, Mrs. O'Connor, insisting that the notes be paid. A week later another letter was written to the defendant by the attorneys, advising her that unless additional security should be given or unless she could obtain the signatures of her son and daughter on the notes, foreclosure proceedings on the chattel mortgage given by her would be instituted. About this time Mrs. O'Connor sent her daughter, Marguerite Glavey, and her son, Jack Glavey, to the plaintiff's attorneys, with an offer to pay the interest on the said notes, which offer was refused. Some few days later, suit was instituted by the plaintiff herein, payee in said notes, against Mrs. O'Connor, to collect the balance due on the notes and to foreclose the chattel mortgage.

On April 20, 1935, a decree was entered in favor of the plaintiff and against Mrs. O'Connor in the foreclosure proceedings, for the balance due on the notes and the foreclosure of the mortgage. Thereafter the mortgaged property was sold and a considerable amount of it was bought by Mrs. O'Connor's son, Jack Glavey. The amount realized from the sale was not

sufficient to pay the judgment but left a balance of $1,031.17 due the plaintiff. Execution was thereupon issued for the balance of the judgment and returned *nulla bona.*

After the letters of January 4 and 11, 1935, were written by the plaintiff's attorneys to Mrs. O'Connor, the latter, under date of January 16, 1935, made, executed and delivered to her daughter a quitclaim deed to all her interest in certain real property in Wasco county, Oregon, consisting of city lots and farm lands. The deed was filed for record January 19, 1935.

This suit was instituted March 22, 1937, to have set aside said deed from the defendant Mary Glavey O'Connor to her daughter, as having been made to hinder, delay and defraud the creditors of said Mrs. O'Connor and especially this plaintiff, Bridget Connel. The deed from Mrs. O'Connor to her daughter attempted to convey to the grantee therein Mrs. O'Connor's interest in the real property which she had inherited from her deceased first husband, T. W. Glavey, and the interest in the said property which she had inherited from her deceased minor child.

In attempting to uphold this conveyance from Mrs. O'Connor to her daughter, Marguerite Glavey, the defendants contend that Mrs. O'Connor had received as guardian for her two children, Marguerite and Jack Glavey, large sums of money and other personal property to which they were entitled from the estates of their father, T. W. Glavey, and their uncle, John Glavey; that the mother had used the money and personal property as her own and had not accounted therefor to her two children; and that the deed was given by her to Marguerite to hold in her own right and as trustee for her brother, Jack, in satisfaction of their claim for money then due them from their mother.

T. W. Glavey died intestate in Wasco county in 1918, leaving surviving him his widow, defendant in this suit, who later became Mrs. O'Connor, and three minor children, the defendant Marguerite Glavey, Jack Glavey and another child who died in infancy. At the time of his death Mr. Glavey was the owner outright of a small amount of real property and the owner of an undivided interest, in various instances an undivided one-half, one-third or one-fourth, in other parcels of real property consisting of town lots and farm lands in Wasco county. His interest in the real property was appraised in his estate at approximately $28,000.

Under the law then existing the widow was entitled at her election to take in fee simple an undivided one-third interest in the real property of the deceased husband (Laws 1917, chapter 331), and Mrs. O'Connor, then Mrs. Glavey, did elect to take an undivided one-third interest in her deceased husband's real property. The three children were entitled to an undivided two-thirds interest, and on the death of the minor child Mrs. O'Connor inherited an additional undivided two-ninths interest in her late husband's estate: § 10-101, Oregon Code 1930.

The personal property of T. W. Glavey, deceased, was appraised at $45,351.01, and the widow was entitled (§ 10-102, Oregon Code 1930) to one-half of it after the debts of the decedent and the costs of administration, amounting to $5,311, were paid. The distributive share of each child in the personal property of the father's estate was of the appraised value of $6,673. The widow, who thereafter became Mrs. O'Connor, acted as administratrix of that estate and later as guardian of her three children. Marguerite Glavey, one of the defendants herein, became 18 years of age

in 1927. Jack Glavey, however, did not become 21 years of age until 1937.

About June, 1924, Marguerite Glavey and Jack Glavey, respectively, became entitled to receive from the estate of their uncle, John Glavey, approximately $7,880 and $1,750, bequeathed to them by their uncle's will. Apparently this money was paid to their mother, as guardian for them.

The complaint contains the allegation usual to a suit of this nature. The answer admits some of the allegations of the complaint, by failure to deny the same, and puts in issue the other allegations by general denial or denial on information and belief. No affirmative averments are contained in the answer.

■ The appellant questions in this court for the first time the sufficiency of the defendants' pleading to permit them to show that the transfer of Mrs. O'Connor's interest in real property to her daughter was not affected for the purpose of hindering, delaying or defrauding Mrs. O'Connor's creditors, and that there was an adequate consideration paid by the daughter. No demurrer to the answer was filed by the plaintiff and no objection was made by her to the introduction of testimony by the defendants to prove the *bona fides* of the transaction between them. In view of the absence of demurrer to the answer or objection to the admission of testimony, we shall proceed to ascertain whether the evidence in the case is sufficient to uphold the conveyance as not in fraud of creditors.

■ It is a well-recognized rule of law in this state that a debtor in failing circumstances may prefer one creditor over another, by giving him security for his debt to the exclusion of others or by transferring property to him in payment of an existing indebtedness, so long as the favored creditor does not participate in the

fraudulent purpose of the debtor to defraud other creditors and so long as there is not a secret reservation of benefit to the debtor in the property so conveyed or the security so given: *Sabin v. Columbia Fuel Co.,* 25 Or. 15 (34 P. 692, 35 P. 854, 42 Am. St. Rep. 756); *Hesse v. Barrett,* 41 Or. 202 (68 P. 751); *United States National Bank v. Embody,* 144 Or. 488, 503 (25 P. (2d) 149). The rule is not different when relatives are involved: *Hesse v. Barrett,* supra; *Jolly v. Kyle,* 27 Or. 95 (39 P. 999).

■ When a debtor conveys the whole of his estate to a near relative, ostensibly in satisfaction of his debt to the latter, it is incumbent upon the grantee, when the conveyance is attacked in a suit by creditors, to establish by satisfactory proof that there was a valuable and adequate consideration for such conveyance: *Jolly v. Kyle,* supra; *Hesse v. Barrett,* supra; *Wright v. Craig,* 40 Or. 191 (66 P. 807); *Harris v. Schnitzer,* 146 Or. 391 (27 P. (2d) 1010). The grantee must also point out the various items constituting the alleged consideration, when the conveyance and the circumstances under which it was made bear the semblance of an attempt to cover up the property of the debtor: *Mendenhall v. Elwert,* 36 Or. 375 (52 P. 22, 59 P. 805); *Walker v. Harold,* 44 Or. 205 (74 P. 705).

After stating the law as above announced, this court in *Marks & Co. v. Crow,* 14 Or. 382, 396 (13 P. 55), observed that: "Any other rule, where property has been shifted from one member of a family to another, and creditors left unprovided for, would lead to the most flagrant frauds. The creditors could not show that the indebtedness claimed to be the consideration of the transfer did not exist. They could do no more than to inquire when and under what circumstances it was created; and unless the recipient of the property

could give a clear and concise account of the items constituting it, they should have the right to ask the court to infer it was a sham and pretense—otherwise, property might be put beyond the reach of creditors with impunity.'' See, also, *Bank of Colfax v. Richardson,* 34 Or. 518 (54 P. 359, 75 Am. St. Rep. 664).

■ The plaintiff in her case in chief established the following facts: (1) that the defendant Mary Glavey O'Connor was indebted to her at the time of the transfer of the property involved in this litigation; (2) that the transfer was made to a near relative of the said defendant, to-wit, her daughter; (3) that the said transfer conveyed all the property then owned by the defendant Mrs. O'Connor; and (4) that the said transfer rendered the defendant Mrs. O'Connor insolvent. Inasmuch as she proved those facts, the plaintiff made out a *prima facie* case, and the burden of proof was on the defendants to show that such transfer was made in good faith and without intent to hinder, delay or defraud creditors: *Orr v. Bauer,* 156 Or. 409 (67 P. (2d) 770).

■ The evidence is unsatisfactory as to how much, if at all, Mrs. O'Connor was indebted to her daughter and son in January, 1935, when she conveyed to the daughter all her interest in the real property here involved. No accounts were kept by Mrs. O'Connor or any one else, covering her financial dealings with her children. At the time of the conveyance of real property from the mother to the daughter there was no attempt on their part to arrive at an understanding as to the amount of indebtedness, if any, owing from the mother to the daughter and son, or either of them. No paper was signed to the effect that the conveyance was in satisfaction of any existing indebtedness.

It has hereinbefore been pointed out that each of Mrs. O'Connor's children was entitled to receive from the estate of T. W. Glavey personal property of the appraised value of $6,673, as a one-sixth interest. A large part of the personal property of that estate consisted of notes or an undivided interest in notes, but the evidence does not disclose whether such notes had been paid, or, if paid, how much was realized from them.

Included in the inventory of assets and constituting more than one-half of the appraised value of the personal property of the estate are 220 shares of stock in Wasco Warehouse & Milling Company appraised at $24,200, which shares of stock have not been sold. The fact that this stock had not been disposed of was brought out on cross-examination of Mrs. O'Connor. At first when asked if she had the stock she answered in the affirmative. The court then asked her if she had sold it and she replied, "I still have it in the family." It is apparent from the testimony, however, that Mrs. O'Connor does not claim any interest in this stock, and it was stipulated at the trial that when she conveyed the real property here involved to her daughter she had no other property or money with which to pay the plaintiff's claim against her. Excluding any receipts from sale of stock that might have been retained by the mother, inasmuch as the stock has not been sold, we find that Mrs. O'Connor could not have received for her children from the personal property of their father's estate much in excess of $2,600 on each child's interest. There is nothing in the record to show, as already mentioned, that she received even that much on their account.

The evidence adduced at the trial of the case brought out that in 1934 Mrs. O'Connor had transferred to her

daughter a mortgage of $11,000 on real property in Morrow county. It was first contended by the defendants that the mother was indebted to the daughter in the sum of approximately $12,000. Later, when it was shown that the Morrow county mortgage had been transferred to the daughter, it was asserted that the indebtedness owing from mother to daughter amounted to approximately $21,000.

The method in which the joint funds of Mrs. O'Connor and her two children were handled is explained in the following testimony of Mrs. O'Connor:

"Q. All during the years of this guardianship you supported the children, Jack and Marguerite? A. Well, I just paid the bills, that is all I know. You can call it support or anything else.

"Q. They lived with you? A. Yes, I sent her away to school, she got a good education; so did Jack. I spent quite a lot on their education.

"Q. That money came out of the estate? A. It came out of the general fund on hand.

"Q. The way you have handled this estate you just used that money as you all three of you needed it, if, when and as needed? A. Well, I handled it all; we had a lot of bad expenses, sickness and debts, like my husband's debts, we had a lot of expenses with the children, the reason; they used it up lots of ways."

It appears that on May 25, 1931, the guardianship of Marguerite Glavey was closed and at that time Marguerite signed a receipt to the effect that she had received her entire interest in the guardianship estate. She was asked how much her mother then owed her, and answered that she did not know. She stated that her mother had continued to use the money belonging to her. Her further testimony in this connection is as follows:

"Q. Did your mother ever give you a promissory note, or other evidence of indebtedness for the money you had advanced to her? A. I don't remember.

"Q. Did she ever advise you as to the amount of your money she was taking? A. Well, she may have, and I don't remember. Q. How do you know it is twelve thousand dollars? A. Well, I imagine it was that; she has told me that much. Q. Has she told you that? A. Yes.

"Q. Do you know, of your own knowledge, that she took that money of yours? A. I would take her word for it.

"Q. Did you have an accounting together, did you ever put down any figures to see what she owed to you? A. Well, I never pinned her down to any figures.

"Q. Well, in what year did you give her the large amount of money, or did she take the large amount of money, or do you know? A. I don't know, I don't remember."

Marguerite Glavey was a school teacher and when this case was heard she had been teaching for some time. After the deed to the real property here involved was given to her she does not appear to have taken any interest in the management or operation of the property conveyed to her. She did not know what the farm earned and she had never received any income from it. When asked who sold the wheat, she answered, "Well, I imagine my mother sells the wheat." The daughter also testified that at the time the deed was executed she knew that her mother was indebted to the plaintiff and to other creditors, and that she thought that the realty conveyed to her by the deed was the last of the property owned by her mother.

It has already been pointed out that the defendants at first contended that Mrs. O'Connor was indebted to her daughter, Marguerite Glavey, in the sum of approximately $12,000. It was not until they were confronted with the fact that Mrs. O'Connor had in 1934

transferred a mortgage of $11,000 to her daughter that they raised the amount of indebtedness claimed to $21,000. They then insisted that the balance of debt remaining after the mortgage had been transferred was approximately $12,000. The items making up this amount were not listed and the defendants wholly failed to furnish any information which would support their statement as to the total debt owing from mother to daughter. The mother testified that there had been some income from the farm for a number of years, and that in other years there had been losses, but no definite information as to earnings or losses was forthcoming. When asked where the money was kept, she first referred to one bank, and when questioned further she mentioned various other banks, and finally stated that the money was in numerous banks. The defendants offered no bank statements, canceled checks or other documentary evidence of the monetary transactions between them. Whether they deliberately attempted to prevent the plaintiff's ascertaining the amount of indebtedness owing from mother to daughter, such was the effect of their unsatisfactory testimony and their failure to explain.

No intimation was given in the answer filed by the defendants that it would be contended on the trial that a part of the consideration for the deed from the mother to the daughter was the satisfaction of the debt owing from the mother to her son, Jack Glavey. The evidence concerning the amount of that debt is as indefinite and uncertain as that concerning the mother's debt to the daughter. In fact, no real effort seems to have been made even to approximate the total amount owing from Mrs. O'Connor to her son at the time the deed was executed.

The record does not contain sufficient facts from which can be ascertained a fair evaluation of Mrs. O'Connor's interest in the property that she conveyed to her daughter. The circumstances under which this conveyance was made by Mrs. O'Connor indicate an attempt on her part to put the property owned by her beyond the reach of her creditors. It was made ostensibly in satisfaction of indebtedness owing by the mother to her two children. The defendants, who are the grantor and the grantee in the said conveyance, have failed to establish by satisfactory proof that the deed was executed in good faith, for an adequate consideration and not for the purpose of hindering, delaying or defrauding the creditors of Mrs. O'Connor.

The decree appealed from is reversed and it is the decree of this court that the deed from Mary Glavey O'Connor to Marguerite Glavey be canceled and set aside. The plaintiff will recover her costs in this court and the circuit court.

RAND and ROSSMAN, JJ., not participating.