Argued at Pendleton October 28; affirmed December 20, 1946;
rehearing denied February 4, 1947

# GRANDY ET AL. *v.* ROBINSON

(175 P. (2d) 463)

*E. R. Ringo,* of Salem, for appellants.

*S. H. Burleigh,* of La Grande (Dixon & Burleigh and R. D. H. Swindley, of La Grande, on brief), for respondent.

Before BELT, Chief Justice, and BAILEY, LUSK, BRAND and HAY, Justices.

HAY, J.

Wm. D. Grandy died, testate, in the year 1922. He was the owner of about 1,280 acres of land in Union County, Oregon, which, prior to the execution of his will, he had contracted to sell. By his will, he provided that the proceeds of the sale should be held by La Grande Investment Company, as trustee, to be invested and the income therefrom devoted to the payment of certain annuities to his four children. The trust was to continue until his youngest child should arrive at the

age of twenty-five years, and the fund was then to be divided in certain proportions between his widow and his children.

The land, at the time of Mr. Grandy's death, was subject to a mortgage indebtedness in the sum of $20,000. The vendee under the contract of sale defaulted, and the trustee thereupon took possession of the land and held it as and for the corpus of the trust. In November, 1936, La Grande Investment Company resigned as trustee, and, on January 27, 1937, the Circuit Court for Union County, in a suit by Ethel R. Grandy, as guardian of Ben Rhodes Grandy, Gloria Grace Grandy and Ethel May Grandy, minor children of the testator and beneficiaries under the trust, against William Roy Grandy, a beneficiary of the trust (who, in the meantime, had been adjudged incompetent) and Sherwood Williams, his guardian, appointed The First National Bank of Portland, Oregon, as trustee. The bank declined to act, and, on March 2, 1937, the court, on motion of Mrs. Grandy, appointed Ernest H. DeLong as trustee, with ample powers, including the power "to sell, lease or let said trust property or any part thereof". Mr. DeLong duly qualified, and proceeded with the active administration of the trust. The mortgage indebtedness was past due, and the mortgagee (an insurance company) was threatening to foreclose. The trustee, however, was able to persuade it to renew the mortgage, upon condition that the entire net income from the land should be applied upon the indebtedness. The renewal was approved by the court. The trustee, with the court's approval, sold 200 acres of the land for $2,250, and applied such sum toward payment of the mortgage debt. A later renewal was also approved by the court.

In the fall of the year 1937, the trustee leased the remaining land to Ralph R. Robinson, defendant herein, for a four-year term. The leased land comprised a dry farm of 1,080 acres, of which 860 acres were tillable and the remainder pasturage and wasteland. The greater part of the tillable area was suitable for grain raising and was used for that purpose. In that region, it is advisable to summer-fallow grain land every alternate year, and Mr. Robinson followed that practice, summer-fallowing one-half the land and cropping the other half each year. The lease was upon a crop-share basis, the landlord's share being one-third of all grain, one-half of all grass or legume hay, and one-third of all grain hay raised on the premises. On March 1, 1941, the trustee renewed the lease to Mr. Robinson, upon the same terms, for a period of five years expiring March 1, 1946. The income derived by the trustee, after payment of taxes and other expenses, was applied toward payment of principal and interest of the mortgage debt, of which $5,000 principal still remains unpaid. Nothing whatever has been paid in respect of the annuities for which the will made provision, and it is apparent that, under the circumstances, no funds were available for that purpose. The Grandys resided in Seattle, Washington, but made numerous visits to the farm during Robinson's tenancy, and it appears that his farming operations were satisfactory to them.

The trust, as we have said, was to terminate when the trustor's youngest child should attain the age of twenty-five years. This occurred on May 5, 1946. This suit arose out of events that transpired during the last year of Robinson's lease.

The plaintiffs are Ben and Gloria Grandy and Ethel

Knight, trustor's children by his second wife, William Roy Grandy, his child by his first wife, and Ethel R. Grandy, his widow. (No one appears to have questioned the right of William Roy Grandy to appear as a party plaintiff, although, as has been stated, he had theretofore been adjudged incompetent.) The amended complaint, after formally alleging the appointment of Mr. DeLong as trustee and his leasing of the farm land to Robinson, recited that the lease expired on March 1, 1946; that Robinson then vacated the premises, and that plaintiffs have been in possession thereof at all times since then; that the trust expired May 5, 1946; that, prior to the expiration of his lease, Robinson seeded grain upon the premises, and that the crops therefrom were then growing; and that Robinson claimed the right to enter upon the premises and harvest the crops when ripened and convert them to his own use. A decree was prayed for declaring that Robinson had no lawful right to enter upon the premises and remove the crops.

The defendant made general denial and, for affirmative defense, alleged that, on or about April 1, 1945, he applied to DeLong, the trustee, for an extension or renewal of his lease; that DeLong informed him that, in view of the fact that the trusteeship would terminate in 1946, and that he did not know what the Grandys might desire to do about the future farming of the land, he did not feel that he had the right to renew the lease for any definite time; that it was thereupon orally agreed between the trustee and the defendant "that the defendant should go ahead and cultivate and farm said real property as a tenant at will; that if, at the termination of said trust, the beneficiaries thereunder did not desire to continue his said

lease that he should have the right to harvest any crops sowed by him upon said premises and to keep as his own property the tenant's share of said crops''; and that, under such agreement, he farmed and cultivated the land, and sowed crops of grain thereon which would mature during 1946. Further, defendant alleged that, about November 1, 1945, plaintiff Ben Rhodes Grandy requested of the trustee that he be permitted to take over the farm, claiming that he had the consent of and was representing his mother and sisters; that the trustee thereupon informed Ben of his agreement with defendant aforesaid; that Ben professed satisfaction therewith, and agreed that, if he were permitted to take possession of the premises, he would recognize defendant's rights thereunder; that the trustee thereupon, after informing defendant of the arrangement and securing his consent thereto, allowed Ben to take possession; that, when defendant surrendered possession to Ben, the latter agreed that defendant was entitled to harvest the crops which he had sown; and that such agreement was, in part, the consideration for defendant's surrendering the premises without requiring lawful notice. The affirmative answer was denied by the reply.

The court, after a hearing, found for defendant, and granted him the right to enter the premises and harvest the crops. Plaintiffs appealed.

Mr. DeLong, the trustee, testified respecting his handling of the property and his leasing to Robinson. He said that, in the spring of 1945, at about the time when it was necessary to begin cultivation, Robinson inquired of him if he (Robinson) would be expected to farm the land that year. DeLong had learned from experience that fall-seeded crops did better on that

land than those seeded in spring. He told Robinson: "I think you should farm it like you would if you were going to farm it another five years, because I don't know who is going to farm it after forty-six. I don't know whether the Grandys want to farm it or not." Ben Grandy was then in "the Service"; nobody knew when he would be out, and the Grandys had not intimated what they wanted to do when the trusteeship terminated. He told Robinson to go ahead and summer-fallow and seed as if he were going to remain on the farm; to put in fall wheat; and that he would be allowed to harvest that and if someone else took over they would take the rest. Robinson thereupon proceeded to summer-fallow, and, in the fall, seeded a portion of the land to wheat.

Defendant's testimony was along similar lines. He said that in 1945 he summer-fallowed approximately 320 acres and fall-seeded it to wheat. The crop, he thought, would average 40 bushels to the acre, and would be worth about $18,000. In addition to agreeing that he might harvest the wheat, Ben agreed to pay him for 25 or 30 acres of plowing. After he vacated the place, some fences around the grain land became out of repair, Ben's horses got into the grain, and Robinson returned and repaired the fences. He also returned and reseeded five or six acres of land which had "drowned out". He returned frequently and "rode the ditches" and fixed culverts. (The land is rather flat, some of it is subject to overflow, and ditches have been dug to drain it.) He dug snow from the ditches "in order for the water to get started." He said that Ben was present and talked with him a good bit on one occasion while he was at work cleaning one of the ditches. He did not know, until served with summons herein, that his right to harvest the crops was disputed.

Ben Grandy denied flatly that there was any such understanding as testified to by DeLong and Robinson. He said that Robinson told him that he had a crop of sweet clover on part of the land, and would take $200 for it. On the advice of his attorney, he said, he gave Robinson no answer to this offer. "I was advised not to irritate or provoke him; and I purposely stayed away from Mr. DeLong's office, and made every attempt I could to keep from provoking Mr. Robinson." He explained that his reason for this attitude was that DeLong had threatened to sell 160 acres of the land to Robinson, which sale was opposed by the Grandys. DeLong had the right to sell the land, and he was afraid that if he provoked him he would do so. He permitted Robinson to repair fences because they had been left out of repair when he vacated, and he regarded it as Robinson's obligation to make the repairs even although he was already off the place. He admitted that he saw Robinson, on one occasion, digging a channel for the purpose of draining a pool of water on the land to let it escape into the ditch, but thought that at that time Robinson was still living on the land. In March, 1942, Robinson spoke to him about wanting to buy a part of the land, but he told him that "we were not interested in selling", as the land was more valuable undivided.

There was further testimony by Ben Grandy, and testimony by his mother, his sisters, and others, tending partially to corroborate his.

■ In view of the conflict in the testimony, the circumstances of the case give weight to the trial judge's decision in favor of the defendant upon the facts. The amended complaint admits that the plaintiffs were

allowed to go into possession of the place before the termination of the trust. Robinson had expended much labor and some money in cultivating the land and sowing crops, and it would appear to be improbable that he did so without having come to some agreement with the trustee. He returned to the place from time to time, and performed labor necessary for the protection of the crops, of at least some of which Ben Grandy was aware but made neither protest nor comment. Ben admitted that Robinson told him that he claimed a crop of sweet clover on the land. The trial judge saw and heard the witnesses testify. The probabilities appearing to sustain his findings, we are constrained to accept them.

■ The trust in this case, in accordance with the limitation expressed in the testator's will, expired when his youngest child attained the age of 25 years, which was on May 5, 1946. 54 Am. Jur., Trusts, sections 70, 73; *Lent v. Title and Trust Co.*, 137 Or. 511, 515, 3 P. (2d) 755. The final account of the trustee, which is in evidence, concedes this. Defendant, of course, had the burden of proving his affirmative defense.

■ The utmost good faith is required of a trustee in the administration of his trust, and he is held to undivided loyalty to the interests of the beneficiary. 54 Am. Jur., Trusts, section 311; *Shute v. Johnson*, 25 Or. 59, 34 P. 965. There is a strong suggestion in the appellants' brief that, if the alleged agreement between the trustee and the defendant actually was made, it was fraudulent. They contend that, by reason of the fact that the trustee was the defendant's father-in-law, the court must presume fraud in the agreement. Where it is claimed that dealings between near relatives are tainted with fraud, courts will scrutinize the trans-

actions closely, and will consider such relationship with other facts and circumstances from which an inference of fraud is sought to be drawn. *Marks & Co. v. Crow,* 14 Or. 382, 13 P. 55; *Clarke v. Philomath College,* 99 Or. 366, 378, 193 P. 470; *Crocker v. Russell,* 133 Or. 213, 287 P. 224; *Orr v. Bauer,* 156 Or. 409, 415, 67 P. (2d) 770; *Connel v. O'Connor,* 159 Or. 348, 355, 80 P. (2d) 542; 24 Am. Jur., Fraud and Deceit, section 283. The law is especially severe in condemning transactions by a trustee wherein his duties conflict with his self-interest. So, a trustee will not be permitted to become a purchaser at his own sale (*Marquam v. Ross,* 47 Or. 374, 404, 78 P. 698, 83 P. 852, 86 P. 1) nor to sell or lease trust property to his wife (*Wilmington Trust Co. v. Carrow,* 14 Del. Ch. 290, 125 A. 350, 352). The mere close relationship of the parties to the transaction, however, is not in itself sufficient to stamp it as fraudulent, but may be considered in combination with other facts and circumstances indicating a fraudulent intent. 24 Am. Jur., Fraudulent Conveyances, sections 28, 29. Here, while it appears that the trustee favored a sale of a part of the property to defendant, and had the right to sell, he respected the desire of the beneficiaries to keep the property intact, and did not sell. As for his permitting the defendant to hold over, the evidence is that defendant was a good farmer, who, for eight years, had done an excellent job of farming the property. The rent reserved was reasonable, and it is not claimed that a lease to a stranger would have resulted in greater income to the trust. The beneficiaries had known for years that defendant was lessee of the land and that he was the trustee's son-in-law, but made no objection to his tenancy. If plaintiffs sought to rely upon fraud, they should have pleaded it.

*Heisler v. Hammond Mammoth Mines Co.*, 110 Or. 403, 223 P. 735. In any event, we find nothing in the evidence to sustain the charge of fraud.

■ The oral agreement between the trustee and the defendant had the effect, he contends, to make him a tenant at will of the property. Section 8-305, O. C. L. A. At the time when the understanding was entered into, the defendant's lease had still about a year to run. The trust would not terminate until about two months after the expiration of the lease. The rule is that, ordinarily, when the trust is terminable at a fixed period, the trustee cannot properly lease trust property for a term extending beyond the period of trust. Restatement, Trusts, section 189, Comment c; Bogert, Trusts and Trustees, vol. 4, section 787; Anno., 61 A.L.R., 1368. There may, however, be circumstances under which the trustee, although without specific authority to make a lease beyond the period of the duration of the trust, may be held to have authority to make such a lease for a reasonable period. Such circumstances, it has been said, include (1) the character of the property, (2) the custom with respect to duration of leases of such property in the community, (3) the inability to procure reasonable rentals for such property if leased for a shorter term, and (4) the disposition of the property to be made at the termination of the trust. Restatement, Trusts, section 189, Comment c. Other circumstances which have been considered by the courts include the rights of the beneficiaries, the nature and character of the property, and the uses to which the property may reasonably be put. 54 Am. Jur., Trusts, section 472.

■ It will be remembered that the will was drawn by the testator under the belief that the property had

been sold. Because of that fact, the testator made no provision to clothe his original trustee with power either to sell or to lease the property. The present trustee, however, is a substitute trustee appointed by the court with the approval of the plaintiffs in this suit, and, with their approval, he was given full power, in dealing with the trust property, to sell it or to lease it. In that connection, the trustee derives his authority not from the original trust, but rather from the court's order appointing him. Even without the consent of the beneficiaries, the court had the authority, in providing for the carrying out of the ultimate intentions of the trustor, to permit sufficient variation from his original scheme to meet the necessities of the situation and, in that connection, to give the trustee the right to sell or to lease the trust property in its changed form. *Ruggles v. Tyson,* 104 Wis. 500, 79 N. W. 766, 81 N. W. 367, 48 L. R. A. 809. It is apparent from the evidence in the present case that it was incumbent upon the trustee to operate the trust property so as to produce income. It being farm property, some one had to farm it. Under proper husbandry, this land had to be summer-fallowed, and moreover it was necessary that crops which were to be harvested in 1946 should be sown in the fall of 1945. The trustee had only two alternatives: (1) either to hire the farming done, or (2) to enter into an arrangement with the tenant to continue the farming. We take judicial notice that, in the period in question, competent farm labor was difficult to procure. We are of the opinion that what the trustee did was the only thing that, in reason, he could have done under the circumstances. In an early English case (The *Attorney General v. Owen,* 10 Vesey 555, 560), Lord Chancellor Eldon said: "Upon a devise to

A. in fee in trust for his infant son, to be conveyed to him at the age of 21, and without imposing terms upon the trustee as to the rent, the length, or terms, of the lease, this Court would say, the trustee was to do what was reasonable; and it would be monstrous to hold, that he could alienate the land for 99 years at a stationary rent. The Court would put it both upon the trustee, and the lessee, taking under him, to show, that the act was reasonable; and done in the fair management of the estate.'' We are not here concerned with any attempt on the part of a trustee to tie up the trust property for a long period of time. The authorities all hold that such a lease as the extension here considered would, in any event, be good for the duration of the trust. Restatement, Trusts, section 189, Comment c, p. 498; 54 Am. Jur., Trusts, section 473; Bogert, Trusts and Trustees, vol. 4, section 787. If the land had not been sown in the fall of 1945 (while the defendant's tenancy still continued), it is apparent that the beneficiaries would have had but small chance to have made a crop in 1946, as they would have had no right to enter upon the premises until the termination of the trust; that is to say, at the earliest, on May 5, 1946. We think that the trustee's action in the premises. was not only reasonable but was consistent with the proper performance of his duties as trustee. See generally *Greason v. Keteltas,* 17 N.Y. 491; *In re Upham,* 152 Wis. 275, 140 N.W. 5, 48 L.R.A. (N.S.) 1004, Ann. Cas. 1914C, 376; *Montgomery Ward & Co. v. Norton's Trustee,* 255 Ky. 244, 73 S.W. (2d) 41; *Sweeney v. Hagerstown Trust Co.,* 144 Md. 612, 125 A. 522; *Russell v. Russell,* 109 Conn. 187, 145 A. 648, 63 A.L.R. 783; *North v. Augusta Real Estate Ass'n,* 130 Me. 254, 155 A. 36.

█ No doubt it would have been good judgment on the part of the trustee if, before entering into his arrangement with the tenant, he had secured the court's approval of such a course. The arrangement, however, having been a reasonable one, and one which the court undoubtedly would have approved in the first instance, it may give its approval afterward. Restatement, Trusts, section 189, Comment d, p. 499; *McCrory v. Beeler,* 155 Md. 456, 142 A. 587, 588.

█ Assuming, for the sake of argument, that the trustee had no power to extend the defendant's lease beyond the period of the duration of the trust, then the crops which defendant planted would have become the property of the landlord upon termination of the original lease, unless by custom or by an express agreement with the landlord, the defendant was given the right to enter upon the premises and gather the crops. *Francis Bros. v. Schallberger,* 137 Or. 529, 531, 3 P. (2d) 530, 83 A.L.R. 108. In the case at bar, not only was such right accorded by the trustee, but, in addition, the plaintiffs, upon taking possession of the premises, ratified the trustee's action in this connection, and thereafter, without objection, permitted defendant to return to the land and perform necessary acts incident to the conservation of the growing crops. In our opinion, the trial court was correct in holding that, under those circumstances, plaintiffs were estopped from questioning the validity of the extension agreement. 65 C.J., Trusts, section 671; 19 Am. Jur., Estoppel, section 55; *Smith v. Frantz,* 59 Ind. App. 260, 109 N.E. 407; *Bank of Denton v. Jesch,* 99 Kan. 797, 163 P. 150.

The decree appealed from is affirmed, with costs.